**In Re David SHANE and Helen B. Shane, Debtors.**

**Joseph LEONE and Nancy Leone, Plaintiffs,**

v.

**David SHANE and Helen B. Shane, Defendants.**

**Bankruptcy No. 87–01118–BKC–SMW. Adv. No. 87–0389–BKC–SMW–A.**

United States Bankruptcy Court, S.D. Florida.

Dec. 11, 1987.

As Amended Jan. 8, 1988.

Patricia A. Redmond, Miami, Fla., for defendants.

Marte Singerman, Miami, Fla., for plaintiffs.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW AS TO HELEN B. SHANE

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE came on for trial on October 6, 1987, upon the Complaint of Joseph and Nancy Leone (the plaintiffs) seeking a determination of the dischargeability of a specific debt, pursuant to 11 U.S.C. § 523(a)(2)(A), alleging actual fraud consisting primarily of misrepresentations made in connection with the sale of a piece of real property, and the Court having heard the testimony and examined the evidence presented, observed the candor and demeanor of the witnesses, considered the pleadings and arguments of counsel, and being otherwise fully advised in the premises, does hereby make the following findings of fact and conclusions of law:

Helen B. Shane ("wife") is the wife of David Shane ("husband"). A Judgment was entered against the husband and wife in a New Jersey Court, on June 26, 1986. The husband consented to a non-dischargeable judgment of this debt by separate Order of this Court, dated November 2, 1987.

In connection with the trial of the plaintiffs' Complaint against the husband and wife, certain jury verdicts were obtained. The only special verdicts with regard to the Wife are questions 19, 20 and 21, which read as follows:

19. If you find that David E. Shane is liable for any compensatory damages on plaintiffs' claims regarding rental income, do you also find by a preponderance of the evidence that Helen B. Shane is liable for these damages?

YES

20. If you find that David E. Shane is liable for any compensatory damages on plaintiffs' claim regarding operating expenses, do you also find by a preponderance of the evidence that Helen B. Shane is liable for these damages?

YES

21. If you find that David E. Shane is liable for any compensatory damages on plaintiffs' claims regarding structural condition, do you also find by a preponderance of the evidence that Helen B. Shane is liable for these damages?

YES

The special verdict questions do not establish any independent basis of liability against the wife. The wife's liability is solely derivative of the liability assessed against husband. The issue here is whether the husband's culpability can properly be imputed to the Wife. Accordingly, this Court must inquire into the facts and circumstances.

The total involvement of the wife with the property in question can be summarized as follows:

In approximately 1982, the Wife was the nominal president of a company known as Construction International, Inc., which held title to certain real property. During 1982, that property was sold and the corporation was dissolved inasmuch as its sole purpose was to hold title to the property. A purchase money second mortgage on the property was taken back by the husband and wife in their individual capacity. During all times relevant to the proceeding now before this Court, the wife's only involvement was to hold an interest in a second mortgage as the spouse through a tenancy by the entirety estate.

At the time the property was conveyed to the plaintiffs, the second mortgage was held solely by the husband inasmuch as the wife had conveyed her interest prior to the closing and sale. The wife neither met, spoke to, nor was involved in any way with the plaintiffs, nor was she involved in her husband's business affairs such that there was a duty placed upon her to meet or converse with the plaintiffs at any time prior to the sale. The wife, in actuality, did not meet the plaintiffs until approximately nine months following the conveyance of the subject property.

Subsequent to the sale, the wife, at the direction of her Husband, wrote three letters for clerical or accounting purposes with regard to either payments, delinquent payments or the condition of the subject property. On each such occasion, however, the Court finds that the wife was acting as her husband's scrivener in instances where he was either ill or without a secretary.

At all times material hereto the wife was living in Florida, raising her children, while her husband was tending to the property in New Jersey. The nature of their relationship was not one in which business activities were integrated with marital affairs. Rather, the wife is and was a typical mother and wife who did not know of, and could not have known of, her husband's dealings with the plaintiffs.

The legal issue before this Court is whether actual fraud committed by a husband may be imputed to his wife in the absence of any significant involvement, contact or control, implied or express, by the wife so as to preclude the dischargeability of a debt, pursuant to 11 U.S.C. § 523(a)(2)(A), based on actual fraud where the marital relationship is such that it would not have been deemed reasonable and warranted to place the wife on inquiry notice.

This Court has addressed the issues raised by this case in a variety of situations and consistently held that:

1. objections to the debtors' discharge or dischargeability of a particular debt are to be narrowly construed. *Morales v. Tanner (In Re: Tanner)*, 31 B.R. 338 (Bankr.S.D.Fla.1983); *Bank of Miami v. Lowinger (In Re: Lowinger)*, 19 B.R. 853 (Bankr.S.D.Fla.1982); *Burger King*

*Corporation v. Levine (In Re: Levine),* 29 B.R. 521 (Bankr.S.D.Fla.1983);

2. the burden is on the objecting creditor to prove the facts essential to the objection; *Finance One of Florida v. Scarbaci (In Re: Scarbaci),* 34 B.R. 344 (Bankr.S.D.Fla.1983); *Tanner, supra; Lowinger, supra; Barnett Bank v. Gilman (In Re: Gilman),* 31 B.R. 927 (Bankr.S.D.Fla.1983);

3. frauds under 11 U.S.C. § 523(a)(2), must involve moral turpitude or intentional wrong, *fraud implied in law,* which may exist without imputation of bad faith or immorality is insufficient; *Lowringer, supra;* and

4. the objecting creditor must establish each element by clear and convincing evidence; *Tanner, supra; Lowinger, supra; Gilman, supra; Levine, supra.*

11 U.S.C. § 523(a)(2)(A), requires a showing by the objecting creditor that the debtor obtained money, property, services or an extension, renewal or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud....

This Court has previously held that the creditor must establish each element of 11 U.S.C. § 523(a), by clear and convincing evidence. *Morales v. Tanner (In Re: Tanner),* 31 B.R. 338 (Bankr.S.D.Fla.1983); *Bank of Miami v. Lowinger (In Re: Lowinger),* 19 B.R. 853 (Bankr.S.D.Fla.1982); *Burger King Corporation v. Levine (In Re: Levine),* 29 B.R. 521 (Bankr.S.D.Fla. 1983); *Barnett Bank v. Gilman (In Re: Gilman),* 31 B.R. 927 (Bankr.S.D.Fla.1983). In the case *sub judice,* the Court finds no such clear and convincing evidence of specific fraud and, therefore, the allowance of imputed fraud between spouses, as suggested by the plaintiffs, would negate the very basis of this Court's previous rulings.

To except a debt from discharge, the debtor's actions must involve moral turpitude or intentional wrong. The record before this Court is devoid of any actions by the wife that could possibly be construed as moral turpitude or intentional wrong. This Court is unwilling to impute fraud between spouses without further specific actions by a debtor. In the *Bank of Miami v. Espino*

*(In Re: Espino),* 48 B.R. 232 (Bankr.S.D. Fla.1985), this Court, refusing to impute fraud to the wife, held that since there was no evidence that the wife had signed financial statements allegedly relied on by the bank in extending credit to the business enterprises, which the debtors had previously guaranteed, or had knowledge of the contents of the financial statements, then the creditor's objections to discharge should be denied.

In *Lowinger,* this Court held that although the debtor/wife was designated as an officer, she was, for the most part, uninvolved in the operation or financial affairs of the corporations and the Bank was not entitled to an exception from the debtors' discharge in that the debtors neither knowingly nor intentionally submitted inaccurate corporate financial reports to the Bank. If this court had intended to impute fraud between spouses, the Court's determination that the debtor/wife was uninvolved in the financial affairs of the corporation would have been rendered unnecessary and irrelevant.

Several other cases support this Court's determination regarding imputed fraud between spouses. In the matter of *Chicago Title Insurance Co. v. Mart, (In Re: Mart),* 75 B.R. 808 (Bankr.S.D.Fla.1987), the Court directly addressed the issue of imputing fraud between spouses in an action under § 727(a)(2)(A) and § 523(a)(2)(A), and stated that:

> The fraudulent intent of a husband is not necessarily imputed to his wife and the fact that the wife derived a benefit from her husband's conduct, even if the wife had no idea of this misconduct, which I do not believe to be the case in this instance, the evidence presented by the plaintiffs is insufficient in this instance. As was said in *Reed, supra,* at 993, in affirming a decision upholding the wife's discharge under somewhat similar circumstances:
>
> > The Code does not allow attribution of intent from spouse to spouse.

Accordingly, the *Mart* Court held that the wife would not be denied discharge absent evidence that she colluded with her hus-

band in the conversion of the corporate funds.

Finally, in *First Texas Savings Association, Inc. v. Reed, (In Re: Reed)*, 700 F.2d 986 (5th Cir.1983), the Fifth Circuit Court of Appeals had before it an adversary complaint pursuant to 11 U.S.C. § 727, seeking the denial of a discharge to debtor/husband and wife, wherein the debtor converted non-exempt assets to exempt homestead immediately before bankruptcy with the intent to defraud creditors. The Fifth Circuit sustained the objection to the husband's discharge, addressed the issue of imputing fraud between spouses, and held:

> The Bankruptcy Court correctly concluded that the Code does not allow attribution of intent from spouse to spouse.

The District Court in *Reed, supra,* found that the debtor/wife benefited from the "prohibited activities" and possibly had knowledge of them, but that she did not participate in them, and accordingly granted her a discharge.

Plaintiffs seek comfort in reliance on the case of *Walker v. Citizens State Bank of Maryville (In re: Walker)*, 726 F.2d 452 (8th Cir.1984). This Court, however, finds that case to be distinguishable from the facts before it. In *Walker, supra,* the Eighth Circuit clearly found sufficient involvement by the debtor/husband to find that he knew or should have known of the wife's fraud. In the case *sub judice,* there is no such finding.

The Court adopts the reasoning and holdings of the various courts that have refused to impute fraud between spouses, having here found and concluded, based on the evidence before it, that the wife neither had constructive nor actual knowledge of the fraud or misrepresentations. Therefore, the Court finds that the plaintiffs' Complaint to Determine Dischargeability of Debt with regard to the wife is denied.

A separate Final Judgment of even date has been entered in conformity herewith.