**In re Kathleen L. HUGHES, Debtor.**

**Bankruptcy No. 3–88–00900.**

United States Bankruptcy Court, S.D. Ohio, W.D.

March 17, 1989.

Donald F. Harker, III, Dayton, Ohio, for debtor.

Mary Patrick Latham, Asst. Atty. Gen., Consumer Protection Div., Cincinnati, Ohio.

George W. Ledford, Englewood, Ohio, trustee.

## DECISION AND ORDER DENYING THE STATE OF OHIO'S OBJECTION TO CONFIRMATION OF DEBTOR'S CHAPTER 13 PLAN AND ON ORDER CONFIRMING DEBTOR'S PLAN

WILLIAM A. CLARK, Bankruptcy Judge.

This matter is before the court upon the State of Ohio's objection to confirmation of the chapter 13 plan of Kathleen L. Hughes, debtor. The court has jurisdiction pursuant to 28 U.S.C. § 1334 and the standing order of reference entered in this district. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(L)—confirmations of plans.

### PROCEDURAL BACKGROUND

On March 22, 1988 Kathleen L. Hughes filed a petition in bankruptcy under chapter 7 of the Bankruptcy Code. The State of Ohio was listed as an unsecured creditor in the amount of $100,000. The debt was described by the debtor as "disputed" and as being incurred as a result of a suit arising from the operation of the business of Fairborn Sales and Lease. Earlier in March the State of Ohio had filed a motion for summary judgment in a state court action which alleged that the debtor had

sold motor vehicles with altered odometers and false disclosure statements in violation of state and federal odometer rollback and disclosure laws as well as Ohio's Consumer Sales Practices Act.

On May 12, 1988 Donald F. Harker, III, was substituted as counsel for the debtor and the debtor filed an application for conversion of her bankruptcy case from chapter 7 to chapter 13 on May 20, 1988. An order of conversion was entered by the court on September 6, 1988. Debtor's plan and schedules were filed on September 26, 1988. The debt to the State of Ohio was listed as "unknown" and as "disputed, contingent, and unliquidated." Also listed as creditors were "Unknown Consumers Pursuant to action brought by State of Ohio." This debt was also listed as "disputed, contingent, and unliquidated."[1]

On June 16, 1988 the court entered an order finding that the State of Ohio's state court action against the debtor was an action to enforce a governmental unit's police or regulatory power. 87 B.R. 49. Therefore, under 11 U.S.C. § 362(b)(4), the State's action was not stayed by the automatic stay provisions of section 362(a) of the Bankruptcy Code and the State was permitted to proceed in state court for the purpose of reducing its claim to judgment and obtaining injunctive relief. Subsequently, the State of Ohio was granted a summary judgment against the debtor on September 30, 1988 and obtained an award of $109,500 as statutory damages for the sale of 73 motor vehicles with rolled back odometers and $98,000 in penalties for violation of Ohio's Odometer Rollback and Disclosure Act and Consumer Sales Practices Act. The judgment entry makes it clear that the court held the debtor liable for the acts of her husband by virtue of a principal-agent relationship between them.

Debtor's plan proposes to pay $100 a month to the trustee for 36 months.

The State of Ohio has objected to confirmation of the debtor's plan on the following grounds:

1) debtor has filed her plan in bad faith;

2) unsecured creditors would receive less under the plan than under the liquidation provisions of the Bankruptcy Code; and

3) debtor's unsecured debt exceeds the $100,000 debt ceiling of 11 U.S.C. § 109(e).

### FACTS

The following narration of facts is derived from the debtor's testimony at her confirmation hearing as well as from a previous deposition of the debtor (entered into evidence by stipulation of the parties.) At the outset the court observes that it found the debtor to be an extremely credible witness.

In December of 1984, the debtor began an automobile business under the name of Fairborn Sales and Lease. The business was intended to be primarily a rental business because the debtor had a small amount of previous experience in that field when her husband, Terry Hughes, ran a similar business. With the exception of renting automobiles, the debtor had no previous business experience. She had been a housewife for nineteen (19) years.

State licenses were required to operate the business and these were applied for and obtained by the debtor. Mr. Hughes could not have obtained the licenses because he was at that time on probation for a conviction with respect to rolling back the odometers of motor vehicles. The debtor knew of her husband's convictions, but received assurances from him that he would do nothing dishonest in the operation of the new business. In response to being asked whether she had applied for a used car dealer's license and a leasing license only to enable Mr. Hughes to re-enter the auto leasing business, the debtor answered as follows:

No. I applied for a dealer's license because I had to—somebody had to put food on the table. We had to be able to feed the kids, and to pay the bills, and I did it for automobiles because I couldn't

1. For simplicity, debts to the Attorney General and the Unknown Consumers are referred to in this decision as debts to the State of Ohio.

get a job getting anything else other than minimum wage. I had no experience. Terry knew the business. I was learning about the rentals. I thought this was a chance that we could actually make a go of it. (Deposition p. 82).

Before the business was opened, it was necessary for an inspection to be performed by the Bureau of Motor Vehicles for the State of Ohio. Thomas B. Schoff performed the inspection for the state. The debtor informed him that she had been a housewife, had never operated a business, and did not know any of the rules, regulations or procedures for operating such a business. She asked Mr. Schoff for a procedural manual. Mr. Schoff informed the debtor that the state was currently printing the manuals, but that if she had any questions about the business she should ask her husband, Mr. Hughes, because he knew more about the business than almost anyone in the area. From the questioning of the attorney for the State of Ohio, it appears that Mr. Schoff subsequently pleaded guilty to accepting bribes from Mr. Hughes. The debtor called the title bureau twice in order to obtain a manual of procedures and was told "don't hold your breath." The debtor never did receive a manual of procedures.

The debtor spent most days at the business and her husband would appear for a few hours in the afternoons. One day the debtor was ill and was informed by the personnel at the title bureau that she need not personally bring in the titles to automobiles being sold, but could appoint her husband as her agent for such purpose. The debtor followed this advice and made Mr. Hughes her agent.

With regard to the sale of the automobiles, Mr. Hughes purchased the cars at auctions and filled out paperwork for their sale. When an odometer statement was completed by her husband, the debtor sometimes reviewed it, but sometimes she did not. She trusted him to fill out the odometer statements correctly.

The business did not prosper and the stock of rental automobiles was sold at auction. To the best of the debtor's knowledge the business was closed on December 15, 1985. The debtor did not notify the State of Ohio that the business had been closed because she was unaware of such a requirement. In March of 1986 the debtor learned from Mr. Hughes that he had continued selling cars after she thought the business had been closed. When the debtor asked how this was possible when the business was closed, she was informed that Mr. Hughes had simply continued using her license to sell the cars. The debtor promptly notified the State of Ohio that the business was closed.

Subsequently, a state court found Mr. Hughes liable for the roll-back of 33 odometers prior to the "closing" of the business on December 15, 1985 and 40 odometers during the following 4 months. Mrs. Hughes was also found liable under principles of agency.

## CONCLUSIONS OF LAW

One of the grounds for the State of Ohio's objection to the confirmation of the debtor's chapter 13 plan is that the state would receive less under the plan than upon a liquidation of the debtor's estate in a chapter 7 proceeding. Such assertion is based on the assumption that a sale of the debtor's residence would produce surplus proceeds for the benefit of unsecured creditors. However, relief from the automatic stay of section 362 has been granted to permit a foreclosure of the debtor's residence and the sales price is not expected to exceed the amount of liens on the property and the costs of sale. In the event surplus funds are realized, the debtor has agreed that those proceeds will be used to fund her plan. Therefore, this branch of the state's objection to confirmation is denied.

The State of Ohio also objects to confirmation on the ground that the debtor has failed to meet the eligibility requirements of 11 U.S.C. § 109(e) because on the date of filing her petition in bankruptcy, her noncontingent, liquidated unsecured debts were not less than $100,000. Although the debtor's schedules list the Ohio Attorney General and Unknown Consumers (pursuant to an action brought by the

State of Ohio) as unsecured creditors in an "unknown" amount and schedule the debts as "disputed, contingent and unliquidated," the State of Ohio maintains that the debtor did not actually dispute the amount of the debts because she failed to file a response to the state's motion for summary judgment in state court. The court does not view the debtor's failure to respond to a motion for summary judgment in state court as an admission that the debt is undisputed for bankruptcy purposes. As testified to by the debtor, she had no more funds available to defend the state court action. Whether the debt is categorized as "disputed" is not critical in this case; as explained, below, the debt was "unliquidated" and "contingent" at the time of filing and, therefore, not includible in calculating the debtor's eligibility for chapter 13 under section 109(e) of the Bankruptcy Code. In this circuit, with respect to determining a debtor's eligibility for chapter 13, "a court should rely primarily upon the debtor's schedules checking only to see if the schedules were made in good faith on the theory that section 109(e) considers debts as they exist *at the time of filing, not after a hearing." Comprehensive Accounting Corp. v. Pearson (In re Pearson* ), 773 F.2d 751, 756 (6th Cir.1985) (Emphasis Supplied).

Although the term "liquidated" is not defined by the Bankruptcy Code, the bankruptcy courts agree that a claim is liquidated if its *amount* is readily ascertainable. *Id.* at 754. "[G]enerally speaking, claims are liquidated if the court is able to make a sufficiently precise determination of the amount due for the claim." *In re Blehm,* 33 B.R. 678, 679 (Bankr.Colo.1983). At the time the debtor filed her chapter 13 schedules, there was simply no method the court could have employed to ascertain with precision what amount the state court would later fix and award as damages.[2] Therefore, the debt to the State of Ohio was "unliquidated" at the time the debtor's schedules were filed.

In addition, at the time of debtor's filing of the petition the debt to the State of Ohio was "contingent." A classic example of contingent debts is a tort claim on which no judgment has been entered. *In re Blehm, supra,* 33 B.R. at 679. *Accord, In re Michaelsen,* 74 B.R. 245, 249 (Bankr.Nev. 1987).

> Tort claims have been considered contingent because they require proof by the plaintiff creditor of the debtor's liability and the amount of damages are, by their very nature, not fixed unless and until a judgment is entered setting the debtor's liability. *In re Blehm, supra,* 33 B.R. at 679–680.

In the instant matter, both when the debtor converted her chapter 7 case to chapter 13 and filed her chapter 13 schedules, the state court had not yet entered an order fixing and awarding damages, and therefore the debt to the State of Ohio was contingent.

Where a debt is either unliquidated or contingent, or both, the debt is not included in a calculation of the debtor's eligibility for Chapter 13 under section 109(e) of the Bankruptcy Code. The subsequent judgment entry of the state court does not alter the debtor's eligibility for chapter 13 relief because section 109(e) considers debts as they exist at the time of filing. *In re Pearson, supra,* 773 F.2d at 756.

Finally, the State of Ohio objects to confirmation of the debtor's chapter 13 plan on the ground that the plan has been filed in bad faith in contravention of section 1325(a)(3) of the Bankruptcy Code. The state maintains that bad faith has been demonstrated by—

a) the debtor's dishonest conduct as evidenced by the circumstances surrounding the origin of her debt to the State of Ohio;

b) the debtor's motive in converting from a chapter 7 proceeding to chapter 13, i.e. an attempt to thwart statutory policy by obtaining a chapter 13 discharge for debts that are nondischargeable under chapter 7; and

---

**2.** Obviously this court could not ascertain whether the state court would award punitive damages or ascertain the amount of future punitive damages. "[A] claim for punitive damages is not a liquidated debt." *In re King,* 9 B.R. 376, 379 (Bankr.Ore.1981).

c) a lack of substantial and meaningful payments to unsecured creditors.

■ The State of Ohio contends that the pre-plan conduct of the debtor has been "dishonest." In this circuit, "[w]hen the debtor's conduct is dishonest, the plan simply should not be confirmed." *Memphis Bank and Trust Co. v. Whitman,* 692 F.2d 427, 432 (6th Cir.1982). It is clear that the acts of the debtor's husband in rolling back automobile odometers were dishonest. Although there are no allegations that the debtor actively participated in the actions of her husband, the state court found the debtor liable for her husband's malfeasance on the basis of principles of agency law. The court does not question the propriety of the state court's decision. However, for the purposes of examining the conduct of a debtor, there is a significant difference between finding a person civilly answerable for the fraud of another and imputing the moral character of fraudulent actions to the principal. The court does not view the actions of the debtor's husband as automatically tainting the debtor's conduct with moral turpitude. It is the conduct of the debtor that must be examined and in doing so the court finds no dishonesty on the part of the debtor. The debtor put forth much effort to create a successful business. She sought the advice of others in trying to learn the rules and regulations of that business. She operated within the limits of her knowledge and experience. With the benefit of hindsight it is easily seen that she committed a major "mistake"; she placed complete trust in her husband, who possessed extensive knowledge of the automobile business. After receiving his assurances, she relied upon him to aid her to successfully operate the business. Part of this trust was based on the advice of an agent sent to her place of business by the State of Ohio. It is incongruous that the State of Ohio faults the character of the debtor for not preventing her agent from committing fraud, yet failed to prevent its own agent from accepting bribes from the debtor's husband with respect to the same scheme. Perhaps a more experienced businessperson would have detected the fraud of her husband and taken steps to terminate the fraud. But the court must consider what the debtor did rather than what someone else might have done. While the debtor's business inexperience, her misplaced trust in her husband, and her failure to perceive a fraudulent scheme may constitute poor judgment, they do not constitute dishonest behavior.

Neither does the court find the debtor's pre-plan conduct to be "questionable" or "dubious" so as to require remedial measures to be imposed by the court. Even if the debtor's conduct were categorized as "questionable," "prepetition conduct is but one element in the debtor's total circumstances; the good faith calculus requires the use of discretion by the bankruptcy judge." *Metro Employees Credit Union v. Okoreeh–Baah (In re Okoreeh–Baah),* 836 F.2d 1030, 1033 (6th Cir.1988). As a result, "courts should take into account the totality of the circumstances confronting a debtor, not simply his or her pre-plan conduct, when deciding whether or not to confirm a chapter 13 plan." *Id.* at 1033–1034.

Although there are no precise formulae or measurements to be deployed in a mechanical good faith equation, the Sixth Circuit has approved the following nonexhaustive list as containing some of the factors that a court may find meaningful in making its determination of the presence or absence of good faith:

(1) the amount of the proposed payments and the amount of the debtor's surplus;

(2) the debtor's employment history, ability to earn and likelihood of future increases in income;

(3) the probable or expected duration of the plan;

(4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;

(5) the extent of preferential treatment between classes of creditors;

(6) the extent to which secured claims are modified;

(7) the type of debt sought to be discharged and whether any such debt is nondischargeable in Chapter 7;

(8) the existence of special circumstances such as inordinate medical expenses;

(9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act;

(10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and

(11) the burden which the plan's administration would place upon the trustee.

*Hardin v. Caldwell (In re Caldwell)*, 851 F.2d 852, 859 (6th Cir.1988) (quoting *In re Estus*, 695 F.2d 311, 317 (8th Cir.1982)). In addition, the Sixth Circuit has stated that this list may be supplemented by the following considerations:

1) whether the debtor is attempting to abuse the spirit of the Bankruptcy Code;

2) good faith does not necessarily require substantial repayment of the unsecured claims;

3) the fact a debt is nondischargeable under Chapter 7 does not make it nondischargeable under Chapter 13;

4) the fact that a debtor seeks to discharge an otherwise nondischargeable debt is not, *per se*, evidence of bad faith but may be considered as part of the totality of the circumstances analysis.

*Id.* at 859–860.

The court notes that the debtor is employed, has the apparent ability to pay $100/month for the next 3 years and that her schedules appear accurate. The proposed plan does not prefer certain creditors over others, there has been no indication that the debtor has filed bankruptcy frequently, and there is no suggestion that administration of the plan would place an extra burden upon the trustee.

The State of Ohio, however, asserts that the debts owed to it by the debtor would be nondischargeable in a chapter 7 proceeding and, therefore, to permit the debtor to obtain a chapter 13 discharge would thwart the statutory policy of the Bankruptcy Code. Initially, it must be observed that the State of Ohio has presumed that its debt would be nondischargeable under chapter 7. But it is not at all certain that

the debt would be nondischargeable under 11 U.S.C. § 523(a)(2) [obtaining money, property or services by false pretenses, false representations or actual fraud]. To prevail under that section of the Code, the state would face the formidable task of proving by clear and convincing evidence that the debtor committed actual fraud and that her liability was not solely derivative of the liability assessed against her husband. *Leone v. Shane (In re Shane)*, 80 B.R. 240 (Bankr.S.D.Fla.1988). *See also Driggs v. Black*, 787 F.2d 503 (10th Cir. 1986); *Chicago Title Insurance Co., Inc. v. Mart*, 75 B.R. 808 (Bankr.S.D.Fla.1987). With respect to debts excepted from discharge under section 523(a)(7) for a fine, penalty, or forfeiture payable to a governmental unit, those debts must be payable *to and for the benefit of the governmental unit and not be compensation for actual pecuniary loss*. It is not clear from the evidence presently before the court whether all, some, or none of the debt owing to the State of Ohio would be nondischargeable under the provisions of section 523(a)(7).

■ Even assuming the nondischargeability of the debt to the State of Ohio, as indicated above, the fact that a debtor seeks to discharge an otherwise nondischargeable debt is not, *per se*, evidence of bad faith, although it may be considered as part of the totality of the circumstances analysis. *In re Caldwell, supra,* 851 F.2d at 860. After examining the totality of circumstances in this case, the court believes that the indicia of good faith outweigh any inference of bad faith that may arise by the debtor's attempt to discharge debts which *may* be nondischargeable in a chapter 7 case.

■ Finally, the State of Ohio contends that the debtor's proposed payments are not substantial or meaningful and, therefore, evidence of bad faith. It must be conceded that the proposed payments are not substantial in relation to the total debts of the debtor, but "good faith does not necessarily require substantial repayment of the unsecured claims." *Id.* at 859. The

overriding consideration here is that it appears that the debtor is proposing to pay all that she is reasonably capable of paying. Therefore, the court does not find the amount of the debtor's proposed payments to be evidence of bad faith.

In determining the existence of good faith, the court is mindful that "[g]ood faith is an amorphous notion, largely defined by factual inquiry." *In re Okoreeh-Baah, supra*, 836 F.2d at 1033. Ultimately the court's task is to determine "whether the debtor's plan, *given his or her individual circumstances*, satisfies the purposes undergirding Chapter 13: a sincerely-intended repayment of pre-petition debt *consistent with the debtor's available resources*." *Id.* (Emphasis Supplied).

Here, the debtor, through no active fault of her own, finds herself faced with enormous debts because of the reprehensible conduct of her husband. Clearly the debtor had no active participation in the actions of her husband. Given the vast difference in the business experiences and abilities of the debtor and her husband, the court does not perceive how she could have thwarted her husband's scheme of rolling back odometers. She worked diligently in attempting to make a new business profitable. Unfortunately, she was unsuccessful. Near the end of the business's existence, and shortly thereafter, she was simply duped by her husband as he continued to sell automobiles under her license. The State of Ohio has emphasized the social policy of protecting the citizens of Ohio from consumer fraud. The concern is legitimate, but the state's indignation over the debtor's failure to control her agent-husband is weakened by the fact that it was an agent of the State of Ohio who contributed to the scheme by accepting bribes from the debtor's husband.

The only possible factor in this case that weighs against the debtor is her attempt to discharge a debt in chapter 13 that *might* otherwise be nondischargeable in a chapter 7 case. The court finds nothing else to indicate a lack of good faith and standing alone this factor will not constitute bad faith. Therefore, the court finds that the debtor's plan has been proposed in good faith.

For the foregoing reasons, the State of Ohio's objection to the confirmation of the debtor's plan will be DENIED, and the debtor's chapter 13 plan will be CONFIRMED.

IT IS SO ORDERED.