**In re Jackie R. BUSH, and Louise M. Bush (Deceased), Debtor.**

**Bankruptcy No. 87–62353.**

United States Bankruptcy Court, E.D. Texas, Tyler Division.

Sept. 28, 1990.

Bob Anderson, Smead, Anderson, Wilcox & Dunn, Longview, Tex., for Respon-

dent/Creditor Woodbine Electric Corporation.

Don Williams, Longview, Tex., for Movant/Debtor.

## OPINION

DONALD R. SHARP, Bankruptcy Judge.

This matter came on for consideration of Creditor's Objection to Confirmation of Chapter 13 Plan pursuant to a regularly scheduled hearing on August 15, 1990, in Tyler, Texas. This opinion constitutes findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052 and disposes of the issues presented to the Court.

## FACTUAL AND PROCEDURAL BACKGROUND

Jackie R. Bush and Louise M. Bush ("Debtors'") filed for protection under Chapter 7 of the Bankruptcy Code on November 25, 1987. At the time of the filing, Debtors were subject to two disputed claims. First, Debtor, Louise M. Bush, was charged with embezzling funds in excess of $100,000.00 from Woodbine Electric Service Company ("Woodbine"). Debtor, Louise M. Bush, had pled guilty to state court indictments charging her with embezzling approximately $104,000.00 in funds from Woodbine and was waiting sentencing on July 15, 1988. However, prior to her sentencing, Louise Bush died on March 31, 1988. Accordingly, the criminal action against Louise Bush was subsequently dismissed.

On September 7, 1988, Debtor, Jackie R. Bush, the estate of Louise Bush and Woodbine announced in open court an agreement resolving the allowed claim of Woodbine. The terms of the settlement decreed that Woodbine would have an allowed claim of $791,719.17. The parties further agreed that as pertains to Jackie R. Bush that $50,000.00 of the allowed claim would be excepted from discharge pursuant to 11 U.S.C. § 523(a)(4). On February 28, 1989, Debtors converted their case from Chapter 7 to a case under Chapter 13 of the Bank-

ruptcy Code. Debtors' Chapter 13 Plan envisions modest payments of $100.00 per month for 36 months to unsecured creditors and seeks a complete discharge of all debts owed to Woodbine including the nondischargeable portion of the agreed judgment entered on September 7, 1988.

Creditor, Woodbine, objects to Debtors' Chapter 13 Plan on several grounds. While many of the grounds are simply variations of other grounds asserted, this Court is of the opinion that Creditor's objections can be summarized in three broad categories. First, Creditor raises the objection that Debtor is jurisdictionally unable to be a Debtor under Chapter 13 in that Debtors' owed unsecured debts in excess of the statutory ceilings as of the date of filing pursuant to 11 U.S.C. § 109(e). Second, Creditor argues that Debtors' Chapter 13 Plan is violative of the basic requirement of a Chapter 13 Plan that it be filed in good faith. Third, Creditor argues that Debtor has not committed all of his disposable income to the Chapter 13 Plan as required by 11 U.S.C. § 1325(b)(1)(B).

## DISCUSSION OF LAW

The Code is very clear as to who is entitled to relief under Chapter 13 of the Bankruptcy Code:

"Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $100,000.00 and noncontingent, liquidated, secured debts of less than $350,000.00, or an individual with regular income and such individual's spouse, except a stockbroker or a commodity broker, that owe, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts that aggregate less than $100,000.00 and noncontingent, liquidated, secured debts of less than $350,000.00 may be a debtor under chapter 13 of this title."

11 U.S.C. § 109(e).

The dispute between Woodbine and Debtors concerns whether debts, which are contingent and unliquidated as of the date of the filing of the Chapter 7 petition but are subsequently liquidated and become

noncontingent prior to the conversion to Chapter 13 are treated for jurisdictional purposes as relating back to the original date of the filing of the Chapter 7 petition or alternatively are treated as arising prior to the inception of the Chapter 13 petition. The point of argument is clear—if the debts relate back to the original filing of the Chapter 7 petition, then the debts will be considered unliquidated and contingent as of the date of the Chapter 7 petition and will not count towards the jurisdictional limits of a Chapter 13 Debtor. However, should the debts be treated as arising prior to the conversion to Chapter 13, then Debtors will clearly exceed the jurisdictional limits of a Chapter 13 Debtor. *See* 11 U.S.C. § 109(e).

In support of their proposition, Debtors have advanced the case of *In re: Hughes*, 98 B.R. 784 (Bkrtcy.S.D.Ohio, 1989) as dispositive of this point. In the *Hughes* case, Debtor filed a Chapter 7 petition on March 22, 1988. At the time of filing, the state of Ohio was listed as an unsecured creditor in an amount of $100,000.00. The claim was listed as disputed, contingent and unliquidated. On September 6, 1988, Debtor converted her case from Chapter 7 to Chapter 13. On September 30, 1988, summary judgment was entered against Debtor for an amount in excess of $200,000.00.

Facially, the *Hughes* case appears to be as Debtor maintains indistinguishable from the case at bar on this issue. As in the instant case, the Debtor in *Hughes* was subject to an unliquidated contingent claim prior to the filing of a Chapter 7 petition which when ultimately settled exceeded the jurisdictional limits for a Chapter 13 debtor. However, this Court notes that the liquidation of the debt in *Hughes* took place after the conversion to Chapter 13. In that the debt in *Hughes* was unliquidated and contingent prior to the Debtor in *Hughes* becoming a Debtor under Chapter 13 of the Bankruptcy Code, said Debtor would not violate the jurisdictional limits of a Chapter 13 Debtor. 11 U.S.C. § 109(e). Additionally, the *Hughes* case is not binding authority on this Court. Therefore, this Court finds that *Hughes* is not dispositive of the case at hand.

Resolution of this matter requires an interpretation of three different sections of the Bankruptcy Code. The first is the jurisdictional limitations section of 11 U.S.C. § 109(e). The second is 11 U.S.C. § 706(d) which provides that a Chapter 7 case "may not be converted to a case under another chapter of this title unless the Debtor may be a Debtor under such chapter." The third provision is 11 U.S.C. § 348(a) which states that

"conversion of a case from a case under one chapter of this title to a case under another chapter of this title constitutes an order for relief under the chapter to which the case is converted, but ... does not affect a change in the date of the filing of the petition, the commencement of the case or the order for relief."

At first glance, 11 U.S.C. § 706(d) appears to thwart Debtors' goal. A literal reading of this section seems to indicate that a Debtor may only convert from Chapter 7 to Chapter 13 if at the time of conversion to Chapter 13 said Debtor is entitled to relief under Chapter 13. This section appears to assume that at the time of conversion Debtor is in compliance with 11 U.S.C. § 109(e). However, 11 U.S.C. § 348(a) appears to provide that in cases of conversion between chapters there is no "change in the date of the filing of the petition, the commencement of the case or the order for relief." A reasonable interpretation of this section might indicate that when read in concert with 11 U.S.C. § 109(e) that the date of the original filing of the Chapter 7 is to be used for purposes of establishing whether a Debtor exceeds the jurisdictional limits of a Debtor entitled to file under Chapter 13.

After due consideration, the Court is of the opinion that the latter interpretation is correct. As stated by a noted authority, 11 U.S.C. § 348(a) provides that "those provisions of the code which are keyed to the date of entry of the order for relief for their operation are unaffected in this respect by conversion." 2 *Collier on Bankruptcy* (15th Edition, 1979) para. 348.02 at 348–4–5. In that the date of the filing of

the petition and the order for relief are not affected by the fact that the case has been converted to Chapter 13 and that 11 U.S.C. § 109(e) and its jurisdictional restrictions are keyed to the date of the entry of the order for relief, it would appear to this Court that for purposes of calculation of jurisdictional limits the original date of the Chapter 7 petition is the appropriate date to be used.

With this holding in mind the Court will now examine the application of this holding to the case at hand. It appears to be undisputed by the parties that the Woodbine debt became liquidated and noncontingent after the date of the filing of the petition in Chapter 7 (but before the conversion to Chapter 13) upon the execution of the September 7, 1988, agreed judgment establishing Woodbine's claim. In keeping with the Court's analysis of 11 U.S.C. § 109(e), it is not to be treated as a liquidated and contingent unsecured debt since it was unliquidated and contingent as of the date of the filing of Debtor's petition in Chapter 7. As such, Debtor is not jurisdictionally prohibited from being a Debtor under Chapter 13 of the Bankruptcy Code. While the Court has not directly addressed the issue of the claim of the Internal Revenue Service, it would note that the agreed judgment establishing the Internal Revenue Service's claim was reached on March 14, 1990, which post-dated the conversion to Chapter 13 and as such is not dispositive to the 11 U.S.C. § 109(e) issue presented by Woodbine.

▪ Finally, before the Court concludes its examination of Woodbine's claims vis-a-vis 11 U.S.C. § 109(e) the Court will address Woodbine's argument that the guilty plea of Louise Bush to the indictments in an amount in excess of $100,000.00 served to convert the unliquidated and contingent claims of Woodbine to liquidated and non-contingent claims. Prior to her death, Debtor, Louise Bush's, civil liability to Woodbine was unliquidated and contingent and had not been the subject of a final order in any court of law. It is the opinion of the Court that any argument that Louise Bush's plea of guilty to a charge of embez-

zling in excess of $100,000.00 from Woodbine is negated by the dismissal by the state of Texas of the criminal action charging her with embezzlement. Thus, standing on its own, without a final judgment, Louise Bush's plea of guilty to embezzlement will not suffice to liquidate the claim and render it noncontingent. *In re: Hughes*, 98 B.R. 784, 788 (Bkrtcy.S.D.Ohio, 1989).

The second objection of Woodbine to the confirmation of Debtors' Chapter 13 Plan is concerned with the allegation that the Plan does not comply with the good faith requirement of 11 U.S.C. § 1325(a)(3). Woodbine finds a lack of good faith in Debtors' Plan on three grounds. First, Woodbine objects to Debtors' proposal to pay $100.00 per month for 36 months to fund the Plan. Such a distribution would result in less than a one (1%) percent distribution to unsecured creditors. Second, Woodbine objects that Debtors have demonstrated lack of good faith by failing to provide that all of Debtors' disposable income be applied to fund the Plan. Third, Woodbine complains that Debtor, Jackie Bush, has demonstrated lack of good faith by converting his case to Chapter 13 after Woodbine obtained a nondischargeable judgment against Debtor in the amount of $50,000.00.

What exactly constitutes good faith is not statutorily addressed by the Code. Before 1982, the majority of the courts followed the reasoning that low payouts to unsecured creditors in Chapter 13 violated the good faith requirement. These courts held that good faith required that payments to unsecured creditors be meaningful lest they violate the spirit and provisions of Chapter 13. *In re: De Simone*, 6 B.R. 89, 91 (Bkrtcy.S.D.N.Y.,1980) (one and one-half (1½%) percent payment on student loans contravenes the legislative intent of Chapter 13); *In re: Burrell*, 6 B.R. 360, 365 (Bkrtcy.N.D.Cal.,1980) (good faith requirement required substantial payment to creditors); *In re: Heard*, 6 B.R. 876, 883 (Bkrtcy.W.D.Ky.,1980) (zero (0%) percent or one (1%) percent plans not in good faith); *In re: Hurd*, 4 B.R. 551, 556 (Bkrtcy.W.D. Mich.,1980) (good faith requires meaningful payment); *In re: Terry*, 630 F.2d 634, 635

(8th Cir.,1980) (zero (0%) percent payment plan amounts to abuse of the provisions of Chapter 13).

The year of 1982 stands as a turning point in the treatment of the good faith standard. No fewer than four circuit court cases dealt with the substantial payment requirement as a prerequisite to good faith and uniformly held that substantiality of payment to unsecureds was merely one of many elements of good faith. The first case to deal with this was *In re: Rimgale,* 669 F.2d 426 (7th Cir.,1982). *Rimgale* looked beyond the previous substantiality of payment holdings and instead inquired into whether or not the plan abused the provision, purpose or spirit of Chapter 13. *Id.* at 431. In addition, *Rimgale* listed five possible indicia of good faith, four of which dealt with the accuracy of the details of the plan and one of which with the issue of fundamental fairness. *Id.* at 432. The second case dealing with the substantiality of payment requirement was *In re: Goeb,* 675 F.2d 1386 (9th Cir.,1982). In upholding a one (1%) percent plan, the *Goeb* court held that in defining good faith:

> "The proper inquiry is whether the [debtor] acted equitably in proposing [his] Chapter 13 Plan. A bankruptcy court must inquire whether the [debtor] has misrepresented facts in his plan, unfairly manipulated the Bankruptcy Code, or otherwise proposed his Chapter 13 plan in an inequitable manner. Though it may consider the substantiality of the proposed payment, the court must make its good faith determination in light of all militating factors." *Id.* at 1390.

The other two circuits, in striking down the substantial payment test, held that low payments to unsecureds is alone not a per se violation of good faith. *Barnes v. Whelan,* 689 F.2d 193 (D.C.Cir.,1982) (one (1%) percent payment plan not violation of good faith); *Deans v. O'Donnell,* 692 F.2d 968, 970 (4th Cir.,1982) (in upholding zero (0%) percent plan held that plain language of statute precludes importation of per se rule of substantial payment as a requirement of good faith).

The seminal case setting down the standards for good faith under 11 U.S.C. § 1325 is *In re: Estus,* 695 F.2d 311 (8th Cir.,1982). The debtor in *Estus* attempted to discharge student loans in Chapter 13, nondischargeable in Chapter 7. Approximately fifty (50%) percent of the loans were student loans—half of which were employee credit union loans. The Plan provided for a zero (0%) percent payment for unsecureds. The court held that any per se minimum payment requirement "would infringe on the desired flexibility of Chapter 13 and is unwarranted." *Id.* at 316. However, the court acknowledged that percentage of payment of unsecureds is one of many valid considerations in the question of good faith. *Id.* at 317. To aid in a further definition of good faith, the court listed a nonexclusive list of relevant considerations:

(1) the amount of the proposed payments and the amount of the debtor's surplus;

(2) the debtor's employment history, ability to earn and likelihood of future increases in income;

(3) the probable or expected duration of the plan;

(4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;

(5) the extent of the preferential treatment between classes of creditors;

(6) the extent to which secured claims are modified;

(7) the type of debt sought to be discharged and whether any such debt is nondischargeable in Chapter 7;

(8) the existence of special circumstances such as inordinate medical expenses;

(9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act;

(10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and

(11) the burden which the plan's administration would place upon the trustee.

*Id.* at 317.

However, in applying its test to the debtor in *Estus,* the court suggested that under the facts the debtor may have lacked good faith. In addition to the short (15 month) duration of the plan, the court also viewed unfavorably the fact that the plan involved student loans and that the plan ignored the future pay increases of the debtor. *Id.* at 317. The rule in *Estus* has been copiously cited by succeeding courts and should be considered the standard by which good faith is judged. *In re: Coomes,* 79 B.R. 274, 275–276 (Bkrtcy.W.D.Ky.,1987); *In re: Krull,* 54 B.R. 375, 377 (Bkrtcy.D.Colo., 1985); *Flygare v. Boulden,* 709 F.2d 1344 (10th Cir.,1983) (upholding three (3%) percent plan); *In re: Kitchens,* 702 F.2d 885 (11th Cir.,1983).

■ Considering all of the various factors advanced by the beforementioned courts for consideration of what constitutes good faith in the proposal of a Chapter 13 Plan, this Court holds that it must deny confirmation of Debtors' Plan on three grounds. First, this Court finds that Debtors' Plan does not provide that all disposable income of the Debtor be paid into the Plan. *See* 11 U.S.C. § 1325(a)(3); § 1325(b)(1)(B); *In re: Dalby,* 38 B.R. 107, 112 (Bkrtcy.D.Utah,1984) (proposal by Debtor to pay forty (40%) percent of surplus into Plan is not in good faith); *Matter of Akin,* 54 B.R. 700, 703 (Bkrtcy.D. Neb.,1985) (failure of Debtors' Plan to include provision that as Debtors' disposable income increases it would be applied to Plan is fatal); *In re: Krull,* 54 B.R. 375, 378 (Bkrtcy.D.Colo.,1985) (denying confirmation of Plan that did not provide that increases in disposable income be paid into Plan; however, the Court suggested that this is a suitable issue for Plan amendment).

■ Debtors' Chapter 13 Plan proposes to pay $100.00 per month to the Chapter 13 Trustee for a period of 36 months. Upon examination of Debtors' Plan and proposed budget in addition to an examination of the Debtor at hearing, this Court is convinced that Debtor has understated his income and overstated his expenses. At the hearing, the Debtor admitted that he had miscalculated his average monthly take home pay resulting in an understated discrepancy of $200.00 per month. In addition, Debtor's medical expenses of $325.00 per month will decrease to $100.00 per month after nine months of the Plan. Furthermore, Debtor admitted under testimony that his nondebtor wife netted approximately $680.00 in income per month, none of which was applied toward Plan payments. While Debtor's nondebtor wife is not obligated to contribute toward Debtor's Chapter 13 Plan, the Court takes notice that Debtor's proposed budget envisions paying all of the couples joint expenses. The Court does not view this as good faith vis-a-vis the unsecured creditors. It is the holding of the Court that at the bare minimum, good faith requires that the Debtor increase his proposed Plan payments to approximately $350.00 per month immediately and to an amount of approximately $550.00 once Debtor's outstanding medical expenses are paid in full.

The Court is also influenced towards a finding of lack of good faith by the minimal length of Debtors' proposed Chapter 13 Plan. It is true that nothing in the Code obligates a Debtor to choose a five year plan. *In re: Vensel,* 39 B.R. 866, 868 (Bkrtcy.E.D.Va.,1984). However, five year plans are often construed as implying good faith. *In re: Dalby,* 38 B.R. 107, 111 (Bkrtcy.D.Utah,1984). Conversely, three year or shorter plans are generally taken to imply lack of good faith. *In re: Nkanang,* 44 B.R. 955, 958 (Bkrtcy.N.D.Ga., 1984); *In re: Dalby,* 38 B.R. 107, 111 (Bkrtcy.D.Utah,1984); *In re: Estus,* 695 F.2d 311, 317 (8th Cir.,1982).

The final concern of this Court is Debtor's attempt to discharge in Chapter 13 a debt which is nondischargeable in Chapter 7. This Court does not question, standing alone, Debtor's rights pursuant to 11 U.S.C. § 1328(a) to obtain a discharge of these types of debts. However, this Court is of the opinion that this is a legitimate area of inquiry and concern. *Matter of*

*Chaffin,* 816 F.2d 1070, 1074 (5th Cir.,1987) (Attempt by Chapter 13 debtor to obtain a discharge of a previously nondischargeable debt while not per se indicative of lack of good faith is a factor); *In re: Estus* 695 F.2d 311, 317 (8th Cir.,1982) (Attempt to discharge student loans nondischargeable in Chapter 7 is a relevant consideration of good faith).

While the fact that Debtor is attempting to discharge a debt in Chapter 13, nondischargeable in Chapter 7 is not standing on its own indicative of lack of good faith, when this factor is viewed in concert with the significant outstanding unsecured debt, the low proposed payments to the Trustee and the minimal duration of the Plan this Court is unable to find that Debtor's best efforts comply with the good faith standards as envisioned by 11 U.S.C. § 1325(a)(3).

For the previously stated reasons, the Court is left without recourse but to deny Debtor's Chapter 13 Plan of Reorganization on the grounds of a showing of lack of good faith pursuant to 11 U.S.C. § 1325(a)(3). The denial by this Court of confirmation is without prejudice.