In re Isaac and Jacqueline
OKOREEH–BAAH,
Appellants.

METRO EMPLOYEES CREDIT
UNION, Plaintiff–Appellee,

v.

Isaac and Jacqueline OKOREEH–BAAH,
Defendants–Appellants.

No. 86–6214.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 5, 1987.

Decided Jan. 14, 1988.

Steven L. Lefkovitz, Nashville, Tenn., Thomas F. Bloom, argued, for defendants-appellants.

Michael Edwards, argued, Hendersonville, Tenn., for plaintiff-appellee.

Before KEITH and MILBURN, Circuit Judges and EDWARDS, Senior Circuit Judge.

KEITH, Circuit Judge: .

Debtors–Appellants, Mr. and Mrs. Okoreeh–Baah, filed for bankruptcy on November 19, 1985. Their Chapter 13 bankruptcy plan was confirmed on January 14, 1986. Appellees, the Metro Employees Credit Union ("Credit Union"), filed an adversary proceeding (later converted to an objection to confirmation) against the appellants. A Tennessee bankruptcy court found that the appellants' Chapter 13 plan was not proposed in good faith, and denied confirmation on April 30, 1986. The Okoreeh–Baahs appealed to the United States District Court for the Middle District of Tennessee, which affirmed the bankruptcy court's decision on November 6, 1986, adopting the opinion of the bankruptcy judge and dismissing the appeal. The Okoreeh–Baahs now appeal the order affirming the bankruptcy court's decision to deny confirmation of their bankruptcy plan.

Mr. and Mrs. Okoreeh–Baah raise two issues on appeal. They urge that the district court was clearly erroneous in adopting the bankruptcy court's rigid interpretation of this court's decision in *Memphis Bank & Trust Co. v. Whitman*, 692 F.2d 427 (6th Cir.1982). Alternatively, appellants argue that the district court was clearly erroneous in not holding that the 1984 amendments to the Bankruptcy Code, specifically 11 U.S.C. § 1325(b)(1)(B), overrule the harsh rule articulated in *Memphis*, if any. For the reasons set forth below, we reverse and remand the case to the district court for proceedings not inconsistent with this opinion.

## I.  FACTS

In November of 1984, appellants obtained a $3,300 loan from the Credit Union

for a 1983 Volvo. At the time of their application for the loan, appellants were indebted to the Credit Union for approximately $8,000, previously borrowed to purchase a 1981 Oldsmobile. The Credit Union was secured for the $8,000 loan by a notation of lien on the title and chattel mortgage of the Oldsmobile. In extending the second loan to the appellants, the Credit Union released the lien on the Oldsmobile and expected that appellants would record and note the lien on the title of the Volvo.[1]

Shortly thereafter, in January of 1985, appellants' financial difficulties induced them also to borrow money from Nashville City Bank to pay their mortgage, using the same Volvo and other property as collateral. A lien in favor of Nashville City Bank was noted on the title of the Volvo on January 30, 1985. Six months later, appellants informed the Credit Union that they no longer had title to the Volvo, and that they had used it as collateral on the loan from Nashville City Bank. The appellants filed for bankruptcy in November of 1985.

In its decision to deny confirmation of their Chapter 13 plan, the bankruptcy court found that the appellants were not guilty of fraud at the time of obtaining the November 1984 loan, but at some later time broke their promise and formed the intent not to deliver title to the Credit Union due to their financial difficulties. In other words, the bankruptcy court found that appellants were guilty of only "questionable conduct," and not of fraud or dishonesty.

## II. DISCUSSION

The appellants ask us to clarify the analysis required for a determination of a debtor's "good faith" when filing for bankruptcy under Chapter 13 as required by 11 U.S.C. § 1325(a)(3).[2] In *Memphis Bank & Trust Co. v. Whitman*, 692 F.2d 427 (6th Cir.1982), this court decided two issues relevant to the good faith determination. Judge Merritt's opinion first held that courts must look closely at a debtor's conduct before confirming a debtor's plan, and that the debtor should not be allowed to obtain money, services or products from a seller by larceny, fraud or other dishonesty and then keep her gain by filing for bankruptcy. Second, Judge Merritt wrote that when a Chapter 13 debtor's conduct is "questionable," but is not shown to be "dishonest," the bankruptcy court has the option of requiring full payment (100% payment) in accordance with the contract.

Debtors-appellants argue that the bankruptcy court judge in this case applied the *Memphis* opinion in a too-mathematical, too-rigid manner. Indeed, the bankruptcy judge reluctantly interpreted the *Memphis* opinion to mandate two requirements: that if a debtor's pre-plan conduct is found to be "questionable" (not purely dishonest), then a requirement of repayment to the creditor *automatically* kicks in, without evaluating the debtor's other, *possibly mitigating circumstances;* and second, that the required repayment, once questionable conduct is found, *must constitute 100%* of the debt, and no less.

It was the bankruptcy judge's view that consideration of only a debtor's pre-plan conduct, and not his total circumstances, was what was required in *Memphis*. The bankruptcy judge did not balance any factors in reaching his decision that a debtor must fully repay a creditor; instead, he interpreted *Memphis* as laying down a hard-and-fast rule.

In fact, the *Memphis* opinion holds, in pertinent part:

> The view that the Bankruptcy Court should not consider the debtor's pre-plan conduct in incurring the debt appears to give too narrow an interpretation to the good faith requirement. *See, e.g., Matter of Kull*, 12 B.R. 654, 659 (S.D.Ga. 1981) (among the facts a court should

---

1. The Credit Union testified that it is their standard practice to allow the customer to note the Credit Union as lienholder with the Davidson County Clerk's Office, located in the same building as the Credit Union.

2. This statute provides:
   "(a) The court shall confirm a plan if—
   \*   \*   \*   \*   \*   \*
   (3) the plan has been proposed in good faith and not by any means forbidden by law ..."

consider to determine whether a debtor has acted in good faith are "the circumstances under which the debtor contracted his debts and his demonstrated bona fides, or lack of same in dealing with his creditors.")

*One way* to refuse to sanction the use of the bankruptcy court to carry out a basically dishonest scheme under Chapter 13 is to deny confirmation of the proposed plan. When the debtor's conduct is dishonest, the plan simply should not be confirmed. Unless courts enforce this requirement, the debtor will be able to thwart the statutory policy denying discharge in Chapter 7 cases for dishonesty. *Another way* to deal with the problem when the conduct is questionable but is not shown to be dishonest, as the Bankruptcy Court found it to be in the instant case, is to require full payment in accordance with the contract ...

*Memphis,* 692 F.2d at 432 (emphasis supplied). Appellants argue that the above language in the *Memphis* opinion, combined with other courts' interpretations of that opinion, establish that this circuit embraces the "totality of the circumstances" approach, not a mechanical, bright-line rule. We agree.

It seems clear that this court did not mean to adopt a rule requiring 100% payment *any* time "questionable pre-plan conduct" exists, without analyzing any of the debtor's other circumstances. Indeed, if

the Sixth Circuit had intended to announce a test using "questionable pre-plan conduct" as its only balancing factor, this court certainly would not have cited *Matter of Kull,* 12 B.R. 654 (S.D.Ga.1981), *aff'd sub nom. In re Kitchens,* 702 F.2d 885 (11th Cir.1983), in support of its position. The *Kull* court held that "good faith" required a subjective analysis of the "totality of the debtor's circumstances," and listed a variety of factors "which the bankruptcy court must consider, but not be limited to" when decided whether to confirm a debtor's bankruptcy plan.[3]

Moreover, in his *Memphis* opinion, Judge Merritt would not have criticized the "narrow" view of the good faith requirement which would prohibit a court from looking at a debtor's pre-plan conduct. *Memphis,* 692 F.2d at 432. Nor would he have used the language of suggestion, such as "[o]ne way to refuse sanction ...," and "[a]nother way to deal with the problem," if he had meant for this court to issue a mandatory, *per se* rule. It is apparent to us that this court in *Memphis* was merely offering possible avenues of recourse to courts dealing with debtors who have engaged in dubious pre-plan conduct.

It should be noted that the appellants incurred the debt to the Credit Union and engaged in the "questionable conduct" *one year* before filing for bankruptcy, not merely within "a few days of the wrong," which was the worry of this court in *Mem-*

---

3. The *Kull* court listed the following factors as relevant to a good faith analysis:
   (a) the amount of income of the debtor and the debtor's spouse from all sources;
   (b) the regular and recurring living expenses for the debtor and his dependants;
   (c) the amount of the attorney's fees to be awarded in the case and paid by the debtor;
   (d) the probable or expected duration of the Chapter 13 plan;
   (e) the motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13;
   (f) the ability of the debtor to earn and the likelihood of future increase or diminution of earnings;
   (g) special situations such as inordinate medical expense, or unusual care required for any member of the debtor's family;
   (h) the frequency with which the debtor has sought relief under any section or title of the Bankruptcy Reform Act or its predecessor's statutes;
   (i) the circumstances under which the debtor has contracted his debts and his demonstrated bona fides, or lack of same, in dealing with his creditors;
   (j) whether the amount or percentage of payment offered by the particular debtor would operate or be a mockery of honest, hardworking, well-intended debtors who pay a higher percentage of their claims consistent with the purpose and spirit of Chapter 13;
   (k) the burden which the administration of the plan would place on the trustee; and
   (*l*) the salutary rehabilitative provisions of the Bankruptcy Reform Act of 1978 which are to be construed liberally in favor of the debtor.

   *Kull,* 12 B.R. at 659.

*phis,* 692 F.2d at 432. It would appear that these appellants did not scheme, one year in advance, to file for bankruptcy to relieve themselves of their obligations. The bankruptcy court should have considered this issue along with other factors in the totality of the appellants' circumstances.

Similarly, the Credit Union has signaled the fact that appellants also filed for bankruptcy in 1981. This fact should be considered in the "totality of the debtors' circumstances" as well, as a factor counting against confirmation of their Chapter 13 plan.

Many other circuits use a similarly flexible case-by-case approach when analyzing a debtor's conduct. *See, e.g., Matter of Chaffin,* 816 F.2d 1070, 1074 (5th Cir.1987); *In re Johnson,* 708 F.2d 865, 868 (2d Cir. 1983); *In re Kitchens,* 702 F.2d 885, 888–89 (11th Cir.1983); *In re Estus,* 695 F.2d 311, 316–17 (8th Cir.1982); *Deans v. O'Donnell,* 692 F.2d 968, 972 (4th Cir.1982); *In re Goeb,* 675 F.2d 1386, 1389–90 (9th Cir. 1982); *In re Rimgale,* 669 F.2d 426, 431 (7th Cir.1982).

Within this circuit, the same fact-specific analysis is the dominant approach. The following are a sampling of cases which hold that a good faith determination under § 1325(a)(3) requires an inquiry into all the facts and circumstances of a debtor's proposed plan. *See, e.g., In re Harkai,* 68 B.R. 990, 992–93 (Bankr.E.D.Mich.1987); *Matter of Davis,* 68 B.R. 205, 213–14 (Bankr.S.D.Ohio 1987); *In re Stevens,* 25 B.R. 664, 666 (Bankr.S.D.Ohio 1982); *In re Esser,* 22 B.R. 814, 818 (Bankr.E.D.Mich. 1982); *St. Luke Parish Federal Credit Union v. Wourms,* 14 B.R. 169, 170, 171 (Bankr.S.D.Ohio 1981); *In re Belka,* 13 B.R. 607, 609 (Bankr.W.D.Mich.1981); *In re Polak,* 9 B.R. 502, 510 (W.D.Mich.1981); *In re Burchett,* 8 B.R. 473, 474 (Bankr.S.D. Ohio 1981); *In re Granger,* 7 B.R. 14, 15 (Bankr.S.D.Ohio 1980); *In re Blackwell,* 5 B.R. 748, 751 (Bankr.W.D.Mich.1980); *In re Moss,* 5 B.R. 123, 125 (Bankr.M.D.Tenn. 1980); *In re Johnson,* 5 B.R. 40, 42 (Bankr. S.D.Ohio 1980).

The cases applying the principle set forth in *Memphis* emphasize that a debtor's pre-petition conduct is but one element in the debtor's total circumstances; the good faith calculus requires the use of discretion by the bankruptcy judge. For example, citing the *Memphis* case, the court in *In re Raines,* 33 B.R. 379 (Bankr.M.D.Tenn. 1983), wrote:

> [O]ne overriding common denominator that emerges from an examination of these authorities, ... is that § 1325(a)(3) requires a close examination of the totality of all circumstances surrounding the Chapter 13 case to insure that the proposed plan complies with the basic purposes of Chapter 13 [citations omitted]. This test, which is admittedly inexact, must necesarily be applied on a case by case basis with the final determination left to the sound discretion of the bankruptcy court.

*Id.* at 381. While the interpretations of *Memphis* by the lower courts are not decisive with respect to this court's clarification of that decision, the lower court opinions are instructive in formulating a necessary standard. It is evident that these courts are in need of a flexible rule with which they may work to achieve justice. A harsh, unyielding rule does not afford this needed flexibility, and would be unduly restrictive in many cases.

Good faith is an amorphous notion, largely defined by factual inquiry. In a good faith analysis, the infinite variety of factors facing any particular debtor must be weighed carefully. We cannot here promulgate any precise formulae or measurements to be deployed in a mechanical good faith equation. The bankruptcy court must ultimately determine whether the debtor's plan, given his or her individual circumstances, satisfies the purposes undergirding Chapter 13: a sincerely-intended repayment of pre-petition debt consistent with the debtor's available resources. The decision should be left simply to the bankruptcy court's common sense and judgment.

Accordingly, we hold that *Memphis* did not establish a *per se* rule, and that courts should take into account the totality of the circumstances confronting a debtor, not

simply his or her pre-plan conduct, when deciding whether or not to confirm a Chapter 13 plan.[4]

### III. CONCLUSION

For the reasons expressed above, we REVERSE and REMAND this case to the district court, and direct that court to conduct an examination of the appellants' bankruptcy plan in light of the totality of their circumstances.

**4.** Appellants argue in the alternative that if *Memphis* did require 100% repayment to the creditor, a 1984 amendment to the Bankruptcy Code "overrules" *Memphis* insofar as the amended § 1325(b) now requires debtors to pay only as much as they are able into the plan. This argument is now inapt, however, since we hold that this court did not announce an inflexible rule in *Memphis*.