**In re Linda Ruth ZELNAR, Debtor.**

**Bankruptcy No. 588–864.**

United States Bankruptcy Court,
N.D. Ohio.

Oct. 18, 1988.

Jerome Holub, Akron, Ohio, Trustee.

Marc Gertz, Akron, Ohio for debtor.

Robert Gippin, Akron, Ohio for Cornwell Quality Tool.

### FINDING AS TO CONFIRMATION OF PLAN

HAROLD F. WHITE, Bankruptcy Judge.

On May 19, 1988 Linda Ruth Zelnar filed for relief under the provisions of chapter 13 of the Bankruptcy Code. In her petition the debtor listed only three creditors: National City Bank, a secured creditor owed approximately $8,000 on a 1987 Mazda 323 motor vehicle; Bank One of Akron, an unsecured creditor owed the sum of $1,000 on a Visa card; and Cornwell Quality Tools Co., a judgment creditor in the amount of $82,113.91.

The debtor's Amended Plan as filed on July 7, 1988 provides that National City Bank, the secured creditor, would be paid in full inside the plan and the two unsecured creditors would be paid three percent of their claims over a period of three years. The debtor indicates that she would pay into the plan the sum of $163 semi-monthly out of her current income.

Cornwell Quality Tools Co. (hereinafter referred to as "Cornwell") filed an objection to the confirmation of the proposed chapter 13 plan indicating that the plan was not filed in good faith and was filed only for the purpose of discharging what would be a nondischargeable debt under the provisions of chapter 7 of the Bankruptcy Code.

A hearing was held before the court at which the debtor was represented by counsel, Marc Gertz, and attorney Patrick J. Keating appeared on behalf of the objector, Cornwell. There is little dispute as to the facts in this case. Based upon the evidence and testimony presented at the hearing, the court makes the following Finding of Facts and Conclusions of Law.

## FINDING OF FACTS

1. The debtor is a divorced woman who has been employed as an administrative assistant with Comsol Corporation for a period of approximately one-and-a-half years. Her monthly take-home pay is approximately $1,350. Her monthly expenditures amount to approximately $1,249 which include a car payment to National City Bank in the amount of $212. Although the debtor does not have personal custody of her eleven-year old twins, they live with her and she does not receive support from her former husband.

2. The debtor admits she embezzled the sum of $57,000 from Akron Novelty Co. She indicates that she was arrested for said embezzlement, *see* Finding No. 4, and was placed in the Summit County, Ohio Pre–Trial Diversion Program (hereinafter referred to as "Program") following arraignment. One of the conditions of the Program was that the debtor had to make restitution of the $57,000.

3. After leaving Akron Novelty Co., the debtor was employed by Cornwell from April to October, 1984 and as an employee of Cornwell she was able to embezzle $105,381.15. Of the embezzled money, the debtor used $57,000 to make restitution through the Program to her former employer, Akron Novelty Co.

4. The debtor was indicted by the Summit County, Ohio Grand Jury on or about July 24, 1984 for grand theft (embezzlement) and for forgery as to the $57,000 taken from Akron Novelty Co. After a guilty plea in Case No. CR 84–5–560 in the Court of Common Pleas, Summit County, Ohio, the debtor was sentenced on December 31, 1984 by the Hon. Glen B. Morgan to be incarcerated at the Ohio State Reformatory for Women at Marysville, Ohio for a definite sentence of one year for each crime to be served consecutively.

5. As to the embezzlement from Cornwell, a Bill of Information was issued in the Court of Common Pleas, Medina County, Ohio against the debtor. She was sentenced on January 9, 1985, Case No. 8078, Court of Common Pleas, Medina County, Ohio, by the Hon. Neil W. Whitfield to serve a definite period of two years imprisonment at the Marysville Reformatory, Marysville, Ohio with said sentence to run concurrent with the unserved portion of the sentence imposed in Summit County, Ohio, Case No. CR 84–5–560.

6. At the hearing on the objection to confirmation held before this court, the debtor stated that she served "flat time", being a period of nineteen months. She was then released and obtained her present employment.

7. At the present time, Cornwell claims that it is still owed $98,046.74 as evidenced by a proof of claim filed on July 1, 1988. No exceptions have been taken by the debtor to Cornwell's proof of claim which is premised on a Judgment Entry dated March 28, 1985 in Case No. CV 84–10–3145, Court of Common Pleas, Summit County, Ohio.

8. The court finds that the debtor appears to have an above average intelligence, having graduated from high school and having attended Malone College and the University of Akron for approximately three years, although she did not receive a degree.

9. The debtor was divorced in Case No. DR 84–11–3760, Domestic Relations Court, Summit County, Ohio from her husband who was awarded personal custody of the

**450**

children. Although the order has not been changed, the children live with the debtor without financial support from their father.

10. Pursuant to Fed.R.Evid. 201(c), the court takes judicial notice of the record in Case No. DR 84–11–3760, Domestic Relations Court, Summit County, Ohio, Ronald L. Zelnar vs. Linda Ruth Zelnar.

11. The debtor admits that the purpose of filing the chapter 13 proceeding was to avoid collection proceedings by Cornwell. The debtor never offered or attempted to repay Cornwell prior to filing the chapter 13 petition.

12. While the plan applies nearly all of the debtor's projected disposable income to make payments, Cornwell will have received less than three percent of its claim when the plan is completed.

### ISSUE

Is the plan proposed by the debtor confirmable under 11 U.S.C. § 1325(a)(3)?

### CONCLUSIONS OF LAW

Section 1325(a) and (b) of Title 11 sets forth the standards that must be met before a plan can be confirmed. One of these requirements is that: "the plan has been proposed in good faith and not by any means forbidden by law". 11 U.S.C. § 1325(a)(3).

It is the consensus of the creditor that the debtor's plan has not been proposed in good faith and therefore should not be confirmed. This court agrees.

This decision is based upon a definition of "good faith" pursuant to the "totality of the circumstances" test. *In re Okoreeh–Baah,* 836 F.2d 1030 (6th Cir.1988); *Memphis Bank & Trust Co. v. Whitman,* 692 F.2d 427 (6th Cir.1982).

> Good faith is an amorphous notion, largely defined by factual inquiry. In a good faith analysis, the infinite variety of factors facing any particular debtor must be weighed carefully ... The bankruptcy court must ultimately determine whether the debtor's plan, given his or her individual circumstances, satisfies the purposes undergirding Chapter 13: a

sincerely-intended repayment of pre-petition debt consistent with the debtor's available resources.

*In re Okoreeh–Baah,* 836 F.2d at 1033.

The purpose of chapter proceedings under the Bankruptcy Code is to relieve an honest debtor from oppressive debt and to afford an opportunity for a fresh start. *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1933). In the present case, the debtor has only three creditors, one of which is secured and will be fully paid inside the plan and two of which are unsecured and will be paid three percent pursuant to the plan. One of the unsecured debts is a credit card for which a proof of claim in the amount of $2,600.11 has been filed. Further, said proof of claim indicates that the debt is in the name of Ronald L./Linda R. Zelnar. Pursuant to the Judgment Entry of Divorce, the debtor is only liable for credit purchases made subsequent to November 13, 1984, the date of the debtor's former husband's filing for divorce. It is unknown whether the $1,000 credit card debt listed by the debtor, for which a proof of claim was filed in the amount of $2,600.11, is hers or her ex-husband's. What debt remains and approximates ninety-nine percent of the debtor's unsecured indebtedness is that owed to Cornwell.

The debt was incurred not by one but by two embezzlements. The debtor in the first embezzlement was granted probation and an opportunity to make restitution. However, as stated before, she then deliberately committed a second embezzlement against Cornwell for almost twice the amount of the first embezzlement. *See* Finding of Facts Nos. 2 and 4. The debtor has now served her "flat time" as directed by the Courts of Common Pleas of Summit and Medina Counties. This court cannot condone the actions of this debtor by confirming a chapter 13 plan of arrangement which would allow her to profit from these two embezzlements. *See In re Troyer,* 24 B.R. 727 (Bankr.N.D.Ohio 1982). This bankruptcy court is, after all, a court of equity. As such, the court is "vested with a great deal of discretion in its control over

the process of formulation and approval of reorganization plans." *In re Brock,* 47 B.R. 167, 169 (Bankr.S.D.Calif.1985).

The debtor proposes to pay $326 per month into a thirty-six month plan whereby $212 of that monthly sum will pay the secured creditor on its claim for the debtor's 1987 Mazda automobile. Therefore, only $114 per month for thirty-six months is to go to the unsecured creditors realizing a payment of three percent. Although the debtor, in her Memorandum in Support of Confirmation, argues that her chapter 13 plan is a "sincerely-intended repayment of pre-petition debt consistant [sic] with" her "available resources", the court is fully aware that the purpose in filing for relief under chapter 13 was for the debtor to gain the broad discharge which would most likely be unavailable to her under chapter 7. 11 U.S.C. § 523(a)(4) and (6). To gain the broad discharge of chapter 13, the debtor must however propose a plan "with an intention that is consistent with the purpose of the Chapter, to pay creditors, and that intention must be consummated adequately enough to merit the more generous relief available in this Chapter." *In re Cook,* 3 B.R. 480, 485 (Bankr.S.D.W.Va. 1980).

The court is of the opinion that a three percent payment is a mere pittance, practically nothing, and that the debtor's plan is an attempt to avoid paying the debt rather than to rehabilitate. Because the plan fails to satisfy the good faith requirement of section 1325(a)(3), confirmation must be denied.

A separate Order in accordance with this Finding shall be entered.