**In re James W. BARRETT, aka James Barrett, Debtor.**

**SOCIETY NATIONAL BANK, Plaintiff,**

v.

**James W. BARRETT, et al., Defendants.**

Bankruptcy No. B88–04214.

Adv. No. B88–0531.

United States Bankruptcy Court,
N.D. Ohio.

Sept. 15, 1989.

**386**

Elliott Ray Kelley, Cleveland, Ohio, for debtor and defendants.

Richard C. Kenney, Jr., Weltman Weinberg & Associates Co., Cleveland, Ohio, for plaintiff.

## MEMORANDUM OF DECISION

DAVID F. SNOW, Bankruptcy Judge.

The matter before the Court is a complaint filed by Society National Bank ("Society") against the Debtor, James W. Barrett, his wife, Peggy M. Barrett, and Myron E. Wasserman, the standing chapter 13 trustee, seeking, *inter alia*, the dismissal of this case, a variety of sanctions against the Debtor and an injunction against both the Debtor and Mrs. Barrett from commencing a bankruptcy case for 180 days. The complaint raises two principal issues:

the first relates to the propriety of the so-called "Chapter 20" case; the second concerns Mr. Barrett's good faith. The parties filed a joint trial statement stipulating certain uncontested facts and the admissibility of documents. An evidentiary hearing was held on July 13, 1989 at which the only witnesses called were Mr. and Mrs. Barrett.

### Background

On March 24, 1982, the Debtor and his wife executed and delivered to Society a promissory note in the amount of $35,000 and an open-end mortgage on their residence to secure payment of the note. They subsequently fell behind in their payments and on August 8, 1986, Society commenced a foreclosure action in the common pleas court. On the day of the scheduled foreclosure sale Mr. Barrett filed the first of his three bankruptcy cases. Mrs. Barrett has not been a debtor in any bankruptcy case.

The first case, B87–00007, was filed on January 5, 1987. Mr. Barrett's 1987 income fell far short of his projections and he made no payments to the chapter 13 trustee or to Society while the case was pending in chapter 13. On May 8, 1987 the case was converted to chapter 7 and Society was granted relief from stay on June 10, 1987. Mr. Barrett received a chapter 7 discharge on August 14, 1987. Among the debts discharged was Mr. Barrett's personal liability on the debt secured by Society's mortgage on his residence.

Mr. Barrett again filed a chapter 13 case, B87–03396, on September 22, 1987, six days prior to September 28, 1987, the date of Society's rescheduled foreclosure sale. Here again Mr. Barrett's income did not meet his projections and he made no payments to the chapter 13 trustee or to Society while that case was pending. That case was dismissed on findings that the case was filed in bad faith and in violation of section 109(g)(2) of the Bankruptcy Code. In the November 19, 1987 order dismissing the case, Mr. Barrett was ordered to pay Society's attorneys fees of $695 and enjoined from commencing any bankruptcy

case for a period of 180 days. That 180–day period expired May 17, 1988. The order did not, however, dismiss the case with prejudice.

During his first and second cases Mr. Barrett was employed by a family-owned construction company. In January, 1988, Mr. Barrett was employed as the Director of Criminal Division of the Clerk of Cleveland Municipal Court at a salary of $43,000 per year. In their joint trial statement the parties stipulated that Mr. and Mrs. Barrett's income for 1985 through 1988 was as follows:

|  | Mr. Barrett | Mrs. Barrett |
|---|---|---|
| 1985 | $ 6,630.00 | $ 1,000.00 |
| 1986 | $ 3,777.00 | None |
| 1987 | $ 5,700.00 | None |
| 1988 | $43,000.00 | None |

Nevertheless Mr. Barrett's chapter 13 statements filed January 5, 1987 and September 22, 1987 both showed net monthly income for Mr. Barrett of $1,650.00 ($19,-800.00 per year) and for Mrs. Barrett of $550.00 per month ($6,600.00 per year) or total net income of $26,400.00—dramatically more than the Barretts in fact made.

After the dismissal of Mr. Barrett's second case in November, 1987, the foreclosure sale was rescheduled for April 4, 1988. However, the common pleas court stayed the sale until May 19, 1988 upon Mr. Barrett's motion supported by his affidavit that he had sufficient income to fund a chapter 13 case but was precluded from doing so because of "some technicalities at the Bankruptcy Court, clearing [his] Chapter 7 from the computer." The technicality was apparently the November 19 dismissal order which still had 43 days to run.

After the common pleas court stay expired, the foreclosure sale was rescheduled for June 13, 1988. Although this was nearly a month after the 180–day freeze under the November 19 dismissal order, Mr. Barrett had not filed another bankruptcy case and the residence was sold at foreclosure to a third party on June 13. However, on June 14 Mr. Barrett filed a motion to stay the confirmation of the sale which the common pleas court granted on July 7, 1988. Ultimately the stay of confirmation of the foreclosure sale was vacated, but the delay resulted in the purchaser withdrawing its bid. Therefore the foreclosure sale was again rescheduled, this time for December 13, 1988. But Mr. Barrett did prevent this sale by the commencement of the present case on November 7, 1988.

Since the filing of this case Mr. Barrett has demonstrated his ability to fund the plan by making appropriate payments to both Society and to the chapter 13 trustee. He is still employed by the Cleveland Municipal Court and no evidence was presented to suggest that he could not or would not fund his plan or make his mortgage payments to Society. The plan provides for payment of 100 percent of Society's claim. Despite Mr. Barrett's substantial change of circumstances and willingness and ability to fund his plan and pay Society in full, Society refuses to participate in his plan and seeks in this adversary proceeding orders dismissing the case and restraining both Mr. Barrett and Mrs. Barrett from filing any proceeding or taking any other action which would interfere with Society's foreclosure of their residence.

Society asserts two legal grounds to support its position. The first is based on the proposition that a debtor who has received a discharge in a chapter 7 case is precluded from assuming the mortgage on his house in a subsequent chapter 13 case. This argument is based on the definitions and structure of the Bankruptcy Code. It is discussed subsequently. Society's second ground is premised on its assertion that the Debtor's prior chapter 13 plans were not proposed in good faith and that his actions in connection with his prior cases were so unfair and abusive that the Debtor should be denied the right to proceed with this case, even though he is now fully capable of prosecuting a feasible chapter 13 plan.

*Discussion*

The facts in this case pose starkly, almost in black and white, the question of whether a debtor's prior actions should preclude his now obtaining relief under chapter 13 even though his circumstances have changed so markedly as to virtually assure that the objecting creditor will be paid in

full and the Debtor's plan will be successful. Society presented no evidence and made no argument that the Debtor's present plan, which contemplates payment of Society's mortgage debt in full, is not feasible or that it will suffer any loss or damage if that plan is confirmed. Instead it argues that Mr. Barrett's prior actions were so abusive and lacking in good faith that it should not be compelled to deal with him again, whatever the merit of his present case.

The reasons for Society's anger are understandable and to a significant extent justified. During the course of two bankruptcy proceedings and several state court actions, the Debtor staved off foreclosure five times, often by questionable means and typically on the eve of the foreclosure sale, without paying a penny to Society. It appears that the Debtor has not hesitated to stretch the facts where necessary to provide the court a plausible basis to frustrate Society's foreclosure.

As noted above, the income of the Debtor and his wife in 1987 fell dramatically short of the amounts projected in his first chapter 13 plan filed in January of that year, and bore no relation to their incomes in prior years. Giving him the benefit of the doubt this might be viewed in that case as the divergence between high expectations and a more gloomy reality. Debtor's repetition of these similar optimistic forecasts some nine months later in September of 1987 upon the filing of his second chapter 13 case cannot be so charitably explained away. There is nothing in the record to suggest that the September filing anticipated the income of his present position. Again, the record reveals that at various times within a short period the Debtor represented the value of his house as low as $35,000 and as high as $60,000, geared obviously to the end to be served by the valuation.

Most blatant, however, was the Debtor's misrepresentation in his affidavit filed with the state court in support of his motion to stay the foreclosure sale during the pendency of the 180–day prohibition against further bankruptcy filings in this court's order

dismissing his second case. Notwithstanding the fact that that order contained a finding that his chapter 13 petition had been filed in bad faith and explicitly enjoined him from filing any subsequent bankruptcy petition for 180 days, the Debtor represented to the state court that he was prevented from refiling in bankruptcy only because of "some technicalities at the bankruptcy court, clearing [his] Chapter 7 from the computer." This was a clear misstatement obviously designed to delay the foreclosure process for the balance of the 180 days until the Debtor could refile in this court without in fact violating the dismissal order.

There is nothing in the record to suggest why he did not file another bankruptcy case after the 180–day freeze expired on May 17. Given his history this can only be attributed to neglect. It is ironic to note that because of this neglect the home was in fact finally sold at foreclosure. Only the fact that the buyer was permitted to withdraw its bid after the Debtor had filed a motion to block confirmation of that sale gave the Debtor another opportunity to employ chapter 13 to stop foreclosure. Had the bidder not withdrawn, this case would have been filed too late for the Debtor to have assumed the mortgage. *See In re Glenn,* 760 F.2d 1428 (6th Cir.1985).

Although good faith is not defined in the Bankruptcy Code at the least it requires "honesty in fact" which is the definition given it in the Uniform Commercial Code, U.C.C. § 1–201(19) (1987). In this sense I find that the Debtor's actions in bringing his second chapter 13 proceeding and in dealing with this court's order dismissing that case were lacking in good faith. Although there is nothing in the record to suggest that the Debtor intended to evade his debts or that he did not do his best to pay them, the Debtor through misstatement did in fact abuse the bankruptcy process at Society's expense and to its frustration. However, before considering whether a debtor's lack of good faith in connection with a prior case or cases can or should compel dismissal of the present case, where there is no suggestion of bad faith, we need to decide whether the mort-

gage is beyond the reach of this court, whatever its merit.

### Chapter 20

■ There is a split in the cases as to whether chapters 7 and 13 can be employed seriatim, producing the "Chapter 20" case, to preserve the Debtor's mortgage on his home. Despite suggestions to the contrary in some of the earlier cases, two recent courts of appeal have made it clear that it is not improper *per se* for a debtor to invoke chapter ·13 after having received a chapter 7 discharge. *In re Saylors,* 869 F.2d 1434 (11th Cir.1989); *In re Metz,* 820 F.2d 1495 (9th Cir.1987). Although such seriatim filings may be abusive or contribute to a finding of bad faith, no *per se* rule appears justified. There is no express prohibition in the Bankruptcy Code against such filings. In fact there is strong inferential support for the proposition that such filings are permitted. Section 727(a)(9) expressly denies discharge in a chapter 7 case to a debtor who obtained a discharge under certain circumstances in a chapter 13 filed within the preceding six years. Section 1328, which governs the chapter 13 discharge, has no similar limitation based on a prior chapter 7 discharge.

The real issue, therefore, is whether and to what extent the subsequent chapter 13 case can deal with security interests in the debtor's property, where his personal liability on the obligation secured was discharged in the chapter 7 case. Although there is a split of authority on this issue, the trend appears to be to reject a *per se* rule that would deny the debtor the ability to cure defaults and assume his mortgage under section 1322(b) of the Bankruptcy Code. Both circuit courts which have considered the issue have concluded that the mortgage may in appropriate circumstances be reinstated by the debtor in a chapter 13 case notwithstanding discharge of the underlying obligation in a prior chapter 7. *In re Saylors, supra; In re Metz, supra.* Both courts concluded that the effect of the chapter 7 discharge on the mortgage was to transform the mortgage into a nonrecourse obligation which the chapter 13 debtor could assume under section 1322 of the Bankruptcy Code.

This is in contrast to a number of bankruptcy court cases which have concluded that the chapter 7 discharge extinguished the "debt" owed by the debtor to the mortgagee with the result that the mortgagee ceased to be a "creditor" whose claim could be dealt with under section 1322. *See In re Fryer,* 47 B.R. 180 (Bankr.S.D.Ohio 1985); *In re Brown,* 52 B.R. 6 (Bankr.S.D. Ohio 1985); *In re Binford,* 53 B.R. 307 (Bankr.W.D.Ky.1985). Other bankruptcy courts reached the opposite conclusion, notably in *In re Lagasse,* 66 B.R. 41 (Bankr. D.Conn.1986). Both *Metz* and *Saylors* relied on the analysis in *Lagasse.*

In that case the court held that despite discharge the mortgage continued to be a claim and the mortgagee continued to be a creditor. In reaching this conclusion it relied on section 102(2) of the Bankruptcy Code, which expressly provides that a claim against the debtor includes a claim against property of the debtor. It found additional support in the legislative history of that section in which the House Report stated "[t]his paragraph is intended to cover nonrecourse loan agreements where the creditors' only rights are against property of the debtor, and not against the debtor personally." *Lagasse, supra,* at 43 (citing H.R.Rep. No. 595, 95th Cong., 1st Sess. 315, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5963, 6272).

Society in its trial brief also appeals to the same legislative history in urging the contrary conclusion. It argues that the reference to "agreement" in the quoted language was intended to limit section 102 to voluntary nonrecourse arrangements— not those forced upon the mortgagee by the operation of the chapter 7 discharge. Although the cases are far from clear or uniform on the effect of a chapter 7 discharge on a secured claim, or even on the nature of the debtor's interest in the property securing the claim (*see Saylors, supra* ), it appears that under Ohio law, which governs Society's mortgage, the chapter 7 discharge does not vitiate the mortgagee's

claim or otherwise alter the mortgage relationship between the parties.

Although technically the mortgagee has title and the mortgagor only an equity or redemption, a mortgage under Ohio law is merely incidental to the obligation it secures. "[I]f the obligation secured is destroyed, the mortgage dies with it." 69 O.Jur.3d *Mortgages* § 2 (1986), at 65. Even after breach and prior to foreclosure "the fee and right to possession remain with the mortgagor." *Id.* at 65. In order to foreclose there must be a valid obligation owing to the mortgagee, whether or not the mortgagor can be held personally liable on the obligation. *See* 69 O.Jur.3d *Mortgages* § 238 dealing with the effect of the bar of statute of limitations.

If a more fundamental defect in that obligation exists, such as illegality or the like, which vitiates the obligation, the mortgagee's interest would terminate with it. In other words, for the mortgagee to recover on the mortgage under Ohio law it must have a valid claim against the mortgagor, notwithstanding the fact that recovery on that claim may be limited to the security. Assuming that the collateral is not disposed of in the chapter 7 proceeding, the chapter 7 discharge does not relieve the mortgagee from the necessity of foreclosure or preclude the debtor from redeeming the property by making the requisite payment of the amount secured. *See* Ohio Rev.Code Ann. §§ 2323.07, 2329.33 and 69 O.Jur.3d *Mortgages* §§ 396, 437. Therefore it seems clear under Ohio law that a mortgage where the debtor's personal liability has been discharged nevertheless continues to constitute a "right to payment" and *a fortiori* a claim under section 101(4) of the Code, even without appealing to section 102(2) of the Bankruptcy Code which, as noted, provides expressly that a claim against the debtor includes a claim against the property of the debtor. In summary, neither state law nor the Bankruptcy Code provides any classification other than "creditor" for a mortgagee like Society. Therefore if there are reasons to preclude the chapter 13 plan from curing and reinstating a mortgage under which the debtor's personal liability has been discharged, they do not derive from any definitional or structural constraints in the Bankruptcy Code.

Society cites *In re Bell*, 700 F.2d 1053 (6th Cir.1983) for the proposition that a debtor's choice of chapter 7 constitutes an election as to how it will treat its debts, including its mortgage, which precludes assumption of the mortgage in a subsequent chapter 13 case. In *Bell* the court held that the debtor could not compel the creditor in the chapter 7 context to accept redemption in installments and suggested that a debtor who desired to avoid the onus of lump-sum redemption should either file a chapter 13 or convert to a chapter 13 case. The court did not, however, address the debtor's rights in a subsequently filed chapter 13 proceeding. The court stressed that the chapter 7 procedure was not designed to administer installment obligations.

In *In re Caldwell*, 851 F.2d 852 (6th Cir.1988), the court reviewed a case in which the debtor in a chapter 7 case was permitted four months after discharge to reopen that proceeding and convert the case to chapter 13 in order to deal with nondischargeable debts. Therefore, there appears to be little or no basis in the Sixth Circuit cases, or in the Code, to decide the matter by imposing on the debtor a binding and irrevocable election of remedies. Based upon its approach to the issue of good faith in chapter 13, it appears that the Sixth Circuit would probably evaluate the Chapter 20 case in the context of the totality of the circumstances and not on the basis of an election of remedies or other *per se* rule. This result would also bring this Circuit in congruence with the Ninth and Eleventh Circuits.

### Good Faith

■ Section 1325(a) stipulates in subparagraph 3 that the court shall confirm a plan if "the plan has been proposed in good faith and not by any means forbidden by law; ..." The Sixth Circuit Court of Appeals has explored this good faith requirement in a number of cases. In *Memphis*

*Bank & Trust Co. v. Whitman*, 692 F.2d 427 (6th Cir.1982) the court said:

The "good faith" requirement is neither defined in the Bankruptcy Code nor discussed in the legislative history. The phrase should, therefore, be interpreted in light of the structure and general purpose of Chapter 13. Obviously the liberal provisions of the new Chapter 13 are subject to abuse, and courts must look closely at the debtor's conduct before confirming a plan. We should not allow a debtor to obtain money, services or products from a seller by larceny, fraud or other forms of dishonesty and then keep his gain by filing a chapter 13 petition within a few days of the wrong.

692 F.2d at 431–432. The court also noted that "[o]ne way to refuse to sanction the use of the bankruptcy court to carry out a basically dishonest scheme under Chapter 13 is to deny confirmation to the proposed plan. When the debtor's conduct is dishonest, the plan simply should not be confirmed. Unless courts enforce this requirement, the debtor will be able to thwart the statutory policy denying discharge in Chapter 7 cases for dishonesty." 692 F.2d at 432. Both the tone of its language and the remedy *Memphis* prescribes lend support to Society's argument.

*Memphis*, however, involved a debtor who was attempting to substantially reduce her creditor's claim. In that case the debtor purchased an automobile under an installment contract, made no payments on the contract and filed a chapter 13 case two months after incurring the debt. The debtor sought in her plan to substantially reduce the payments. Since the court found the decision of the bankruptcy court unclear on the standards it had applied in confirming the debtor's plan, it reversed the district court's affirmance of the bankruptcy court and remanded for determination consistent with the court's guidelines.

In *In re Okoreeh–Baah*, 836 F.2d 1030 (6th Cir.1988), the court clarified its holding in *Memphis* in connection with a chapter 13 plan which again dealt with an automobile financing where the debtor, contrary to his commitment to the first secured party,

failed to perfect its lien and, instead, pledged the automobile to another lender. In *Okoreeh–Baah* the court noted that the application of the good faith standard was necessarily fact-specific and that "a debtor's pre-petition conduct is but one element in the debtor's total circumstances; the good faith calculus requires the use of discretion by the bankruptcy judge." 836 F.2d at 1033. Further on the same page the court mandated that "[t]he bankruptcy court must ultimately determine whether the debtor's plan, given his or her individual circumstances, satisfies the purposes undergirding Chapter 13: a sincerely-intended repayment of pre-petition debt consistent with the debtor's available resources."

The court revisited the good faith issue in *In re Caldwell, supra,* which dealt with a debtor's plan in which the debtor sought to discharge a judgment for false imprisonment to the extent of a 50 percent payment. There the court reaffirmed in essence the totality of the circumstances test and noted with approval a list of inquiries to guide the bankruptcy court's determination of good faith. In *In re Doersam*, 849 F.2d 237 (6th Cir.1988), the court restated essentially the same list in holding that a debtor's plan filed approximately six weeks before her graduation, which proposed to discharge her student loans (which were not dischargeable in chapter 7) for 19 cents on the dollar, was not filed in good faith.

The upshot of these cases is that this court in determining whether the Debtor's present case meets the good faith standard must be cognizant of and take into appropriate account the totality of the circumstances including the factors noted in those cases. However, none of those cases dealt with a fact situation similar to this one. Each of them dealt with a situation where the debtor's plan proposed to pay less than full value to a creditor under circumstances which raised a real doubt as to propriety of doing so. In this case, however, there is no question but what the Debtor intends in his plan to pay Society in full or of his capability of doing so.

In each of those cases it was the terms of the chapter 13 case before the court

which raised questions of good faith or abuse of the system. None of those cases involved a change of circumstance. Its importance, where it exists, has, however, been recognized in other multi-filing cases (*see In re Chisum,* 847 F.2d 597 (9th Cir. 1988); *In re Dyke,* 58 B.R. 714 (Bankr.N.D. Ill.1986). In this case the Debtor's change in circumstances has eliminated any objection to his plan—except his right to propose it.

In view of the Debtor's stable employment at substantial income sufficient to fund his plan and pay his mortgage and after taking into account his actions described above, all in light of the standards enumerated in the Sixth Circuit cases previously cited, I conclude that the plan in this case is proposed in good faith and not by any means prohibited by law. In addition to the Debtor's ability to prosecute his plan, the key factor in this determination is the fact that Society will be paid in full. It is not being requested to incur any economic loss or sacrifice because of the Debtor invoking chapter 13. In its brief it argued that loss of the Debtor's personal liability was an improper modification to its mortgage. Whether or not this loss might be deemed significant under other circumstances, the Debtor at the trial offered to reaffirm the Debtor's personal liability under the mortgage thus mooting this issue as a practical matter.

■■■ This is not to say, however, that the Debtor's actions in connection with his prior cases and particularly his manipulation of this court's order imposing the 180–day freeze on filings in his second 1987 case should go unpunished. This court does have a responsibility to see that debtors do not abuse the bankruptcy process or deal unfairly with their creditors, and the court has found that the Debtor's actions in his prior case were improper in both respects. Under these circumstances there is no question but what this court could sanction the Debtor by dismissing this case as Society requests. The court of necessity has broad discretion in selecting a sanction appropriate to the facts presented to it. After hearing the testimony of the Debtor

and his wife and based on all the circumstances I have concluded, however, that the appropriate sanction is to require the Debtor to pay Society not only the $695 awarded pursuant to the court's prior order as a condition to his going forward, but to pay Society's reasonable costs and expenses in pursuing foreclosure to the extent thwarted by the Debtor's improper conduct.

■■■ There is no evidence that the Debtor wasted or secreted any assets, indulged an extravagant life-style or harbored an intent not to pay his mortgage debt. His failure to pay until he obtained his present job was due solely to lack of funds. Although this does not excuse misrepresentations in connection with his prior case, it does not require his exclusion from the bankruptcy process. A debtor need not be a paragon to claim the benefits of the Bankruptcy Code. A debt obtained by the debtor's misrepresentation may be discharged unless the creditor justifiably relied on the misrepresentation. *See Manufacturer's Hanover Trust Co. v. Ward (In re Ward),* 857 F.2d 1082 (6th Cir.1988). Fraud in connection with another case does not preclude discharge unless less than a year old. 11 U.S.C. § 727. Moreover both practical and equitable considerations point up the desirability of a sanction other than dismissal of this case.

No evidence whatever was presented as to Mrs. Barrett's complicity in any misrepresentation or any other action by the Debtor. The sole reason Society seeks an order precluding her filing a bankruptcy case is to prevent her as co-owner of the residence from frustrating its foreclosure. The sole justification suggested for the requested order against Mrs. Barrett is that she benefited from the Debtor's improper activities and therefore should not be in a position to thwart the Debtor's punishment by filing her own chapter 13 to protect her interest in her home. The very request for this order suggests that Society is really seeking punishment of the Debtor because of his actions rather than protection of its own economic interest. While its motivation is understandable, it is neither proper nor necessary, under the facts in this case,

to sanction an innocent party in order to protect the integrity of the bankruptcy system or to protect Society's interests.

The court's order in conformity with this decision is attached.

### JUDGMENT

For the reasons stated in the Memorandum of Decision rendered by the court on the complaint filed by Society National Bank ("Society") against James W. Barrett and Peggy M. Barrett,

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED THAT

1. James W. Barrett be, and he hereby is, ordered to pay Society $695.00 within 30 days of the entry of this order.

2. Society may file an affidavit detailing the costs and expenses it incurred in pursuing any foreclosure action thwarted by Mr. Barrett's improper conduct. The court will determine, consistent with the Memorandum of Decision, the amount of such costs and expenses to be paid by Mr. Barrett without hearing unless a hearing is specifically requested.

3. To the extent not otherwise provided for herein, the relief requested by Society be, and it hereby is, denied.