**In re George C. GEORGEFF, Debtor.**

**Bankruptcy No. 97–57531.**

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division.

Feb. 25, 1998.

Robert J. Mann, Columbus, OH, for Martha R. Bauer.

Robert J. Morje, Columbus, OH, for debtor.

Frank M. Pees, Worthington, OH, Chapter 13 Trustee.

## OPINION AND ORDER ON OBJECTION TO CONFIRMATION OF PLAN

BARBARA J. SELLERS, Bankruptcy Judge.

This matter is before the Court on debtor George C. Georgeff's request for confirmation of his amended plan and the objection of Martha R. Bauer. There have been numerous hearings in this matter and all issues are now before the Court for decision.

The Court has jurisdiction in this contested matter under 28 U.S.C. § 1334(a) and the general order of reference previously entered in this district. This is a core proceeding pursuant to 28 U .S.C. § 157(b)(2)(L) which this bankruptcy judge may hear and determine.

## I. BACKGROUND

### A. Procedural History

The confirmation process in this case has been far more arduous than most cases presented to this Court. The case began on August 19, 1997 where the debtor, acting as his own attorney, commenced his case with a petition only filing. On September 4, 1997 counsel for the debtor first appeared and requested an additional 15–day period to prepare and file the schedules and plan. Bauer opposed that motion and moved to dismiss the case. Allegations in that motion were that the debtor, who is a practicing attorney, filed this case solely to thwart Bauer's efforts to execute on a judgment. The Court heard those matters on September 23, 1997. By that time the bankruptcy schedules, statement of financial affairs and plan had been filed. Accordingly, the Court granted the motion for extra time and denied the motion to dismiss. Any objections to confirmation included in the motion to dismiss were reserved for later consideration at a confirmation hearing.

On September 24, 1997 the chapter 13 trustee conducted the meeting of creditors. The debtor appeared with his counsel and Bauer and her counsel attended. The plan under consideration at that time called for payments of $465 each month to the trustee for payment in full of allowed secured and priority claims and a 12% dividend for allowed unsecured claims.

The battleground next shifted to exemption and valuation issues. Bauer objected to the debtor's claims of exemption in an IRA, a pension fund and a judgment in the debtor's favor for attorney fees in an unrelated state court action. Bauer also moved for an examination of the debtor pursuant to Bankruptcy Rule 2004, requested the production of certain documents, and asked for the right to

inspect and appraise certain personal property. Bauer alleged that the bankruptcy schedules omitted certain assets and that certain assets had been fraudulently transferred prepetition. The debtor opposed the exemption objections and maintained that the document request included with the Rule 2004 examination motion duplicated a prior judgment-debtor examination, was overbroad, and was designed to harass the debtor.

On November 4, 1997 the Court heard the exemption and document production disputes. The Court sustained the objection to exemption of the IRA. The Court reserved ruling on the objection to exemption of the pension plan pending the submission of evidence of ERISA qualification. That evidence was produced at a later time and the objection to that exemption was then withdrawn. The exemption claim for an award of attorney fees to the debtor in a state court action was confusing because the testimony was in conflict as to whether such fees had already been paid to the debtor. However, at the end of the hearing, Bauer orally withdrew her objection to the debtor's claim of exemption for the attorney fee award. At Bauer's request, the Court rescheduled the hearing on the Rule 2004 examination and production of documents matter.

The parties continued to spar over the Rule 2004 examination, the document production request and the requested inspection and appraisal of certain personal property. Those disputes caused continuances of the confirmation hearing date. At one such continued confirmation hearing the Court determined which of the requested documents had to be produced.

In the meanwhile the debtor requested relief from the automatic stay to continue a pending appeal of Bauer's judgment against him. Bauer opposed that motion. After a hearing on November 24, 1997 the Court granted the debtor's motion as necessary to liquidate Bauer's claim and to determine her cross-appeal.

On December 2, 1997 Bauer again renewed her request to inspect certain personal property. At a continued confirmation hearing on December 9, 1997 the Court authorized the inspection and appraisal.

After another request by Bauer to continue the confirmation hearing because of the unavailability of a witness, the final confirmation hearing was scheduled for January 27, 1998. It began on that date and concluded on February 5, 1998. The issue of confirmation is now ready for the Court's decision.

Before the final confirmation hearing and in order to reflect the addition of the IRA asset, the appraised value of the personal property and a real property interest in California, the debtor amended his plan to increase his payments to $465 each month until June 1998, $625 each month until February 1999 and $845 each month thereafter. The dividend to unsecured creditors was increased to 30%. The debtor further proposed to provide accounting to the trustee by way of tax returns and other income evidence for the first three years of the plan for review of the disposable income requirement. Although the trustee indicated on January 27 that the length of the proposed plan exceeded the statutory maximum of 60 months, a later stipulation with a creditor to treat a significant claim as contingent, to be paid by the primary obligor, caused the trustee to amend his recommendation to indicate that he now found the plan to be confirmable subject, of course, to the Court's ruling on the objection.

### B. Factual Background

The facts of this case are somewhat unusual.

The debtor is a 49–year old practicing attorney. Bauer is a former client. Apparently she had fired one or more attorneys in connection with domestic relations court actions before she hired the debtor. At some point in his representation of her, she also fired him. She requested the immediate return of her file because of a pending appeal. When the file had not been returned three days later, she went into the debtor's office while he was in court and took a box containing her "file." She returned that box the following day, although it was not clear to this Court whether her "file" was also returned.

Somewhat later Bauer sued the debtor for malpractice, slander, conversion and intentional infliction of emotional distress. The issue of conversion and one count of malpractice was tried to a jury in state court. That jury returned a verdict in Bauer's favor and assessed compensatory damages in the amounts of $6,468.29 for the one surviving malpractice claim and $5,533.37 for the conversion claim. The jury also assessed the debtor $75,000 in punitive damages on the conversion claim. Subsequently, the state court awarded $11,880.30 in attorney fees to Bauer. The debtor has appealed this judgment and Bauer has cross-appealed for substantial additional attorney fees.

After Bauer certified her judgment, she began efforts to collect it. Those efforts were thwarted by the debtor. Specifically, the evidence showed that after the jury judgment rendered on December 16, 1996 or after that judgment was entered of record on March 12, 1997, the debtor withdrew from a partnership, transferred a vehicle to his father, prepaid a lease, used a former client's bank account to deposit his income, and sold a Lincoln automobile. More importantly, he misrepresented the payment status of the attorney fees judgment in his favor, either caused or enabled certain personalty to be removed from his home after a notice of levy was posted, closed the former client's bank account after a garnishment notice was served, failed to disclose a real property interest in California and undervalued his personal property.

The debtor satisfactorily explained some of his actions. He indicated that he had been negotiating a withdrawal of his interest in the partnership for some time, that the agreement was signed prior to the entry of Bauer's judgment, and that he received no consideration for his withdrawal because his obligations to the partnership exceeded the value of his partnership interest.

With regard to the transfer of the Lincoln vehicle, the Court finds that the Lincoln was sold to a third party for what appears to be fair value. The debtor testified that he sold the car and received cash for that sale. However, title was not issued to the purchaser until August 14, 1997, after the entry of Bauer's judgment and after service of a notice of execution on the car. The explanation given was that the sale preceded the levy notice, that the debtor no longer had the car at the time of the levy notice, and the purchaser's delay in getting a title issued was not due to any acts of the debtor.

The debtor admitted that after Bauer's judgment, he prepaid a car lease. He also deposited his income into a former client's bank account to pay his bills because he knew his account would be subject to garnishment. Other events were less susceptible to understandable explanation, however. In particular, after the debtor received a notice that the account he was using was being garnished, he closed the account and withdrew $4,480 so that the garnishee bank would not pay those monies over to Bauer. Some of those funds belonged to the account owner; some were the debtor's. Likewise, the debtor transferred a 1991 Nissan pick-up truck to his father as shown by a title issued February 14, 1997. The recorded consideration was $3,000. The debtor testified that his father had paid him that amount for the vehicle and that his father had used the vehicle for some period before he purchased it from the debtor. There was no independent verification of either the payment or the usage, and frankly, the Court was not persuaded of those facts.

Testimony about the attorney fee judgment payable to the debtor, which Bauer tried to attach, was very confusing. It is evident that misrepresentations were made in regard to that matter.

Much was made of the debtor's actions with regard to certain personal property. Specifically, the sheriff posted a notice of levy on the front door to the debtor's house. That notice prohibited removal of any item. Despite such notice, the debtor either called family members and suggested they remove certain items or permitted such removal to occur with his consent and assistance.

The issue of his ownership of personal property also merits consideration. The debtor's wife now resides in California although she and the debtor remain married. She has an independent source of income

from her father's estate and does not depend on the debtor for her entire support. At one time she had an antiques and collectibles business, and when that business ceased, some of its inventory made its way into what is now the debtor's home. The debtor's wife also collects art and, because she has only a small apartment in California, much of that artwork was in the debtor's home. It was his position in the judgment-debtor examination conducted in the state court action and in his bankruptcy schedules that, despite their availability for his usage and enjoyment, he has an interest only in a few items of the personal property in his home. Frankly, this Court has heard that argument before in only a slightly different context, and believes it is not well founded. *See Ransier v. McFarland (In re McFarland),* 170 B.R. 613, 620–622 (Bankr.S.D.Ohio 1994).

## II. THE OBJECTION TO CONFIRMA-TION

Bauer's objection to confirmation of the debtor's plan is twofold. First, she maintains that the plan does not meet the "best interests of creditors" test as required by 11 U.S.C. § 1325(a)(4). Secondly, Bauer does not believe that the debtor has proposed his plan in good faith as required by 11 U.S.C. § 1325(a)(3).

### A. The "Best Interests of Creditors" Test of 11 U.S.C. § 1325(a)(4)

Section 1325(a)(4) of the Bankruptcy Code requires a chapter 13 plan to distribute to allowed unsecured claims at least as much as those claimants would receive if the debtor's assets were being liquidated under chapter 7 of the Bankruptcy Code.

■ Earlier in this case, when the debtor's plan proposed a dividend of 12% for unsecured claimants, the Court denied confirmation because the net proceeds from the debtor's IRA and the value of a previously undisclosed interest in real property in California would have required a higher dividend. Subsequently, half of the value of the personal property appraised during this proceeding also was included in the chapter 7 analysis. The debtor then raised his dividend to 30%. Unless and until a court of appeals changes the amount of Bauer's claim, that dividend would satisfy the confirmation requirement of 11 U.S.C. § 1325(a)(4). The Court notes, however, that without the persistence of Bauer in objecting to exemptions and forcing the inclusion of certain non-exempt assets, the dividend offered would not have satisfied the "best interests test."

### B. The Good Faith Test

The other basis for Bauer's objection to confirmation is the requirement of 11 U.S.C. § 1325(a)(3) that a plan must have been "proposed in good faith and not by any means forbidden by law."

■ "Good faith" in the chapter 13 context is governed in this circuit by two cases: *Hardin v. Caldwell (In re Caldwell),* 895 F.2d 1123 (6th Cir.1990) and *In re Okoreeh–Baah,* 836 F.2d 1030 (6th Cir.1988). *Caldwell* holds that the burden of showing good faith is on the debtor and that best efforts do not alone satisfy the requirement. The *Caldwell* court also affirmed its prior position in *Okoreeh–Baah* which held that any analysis of a debtor's good faith requires examination of all the circumstances surrounding a case and includes review of the following criteria:

(1) the amount of the proposed payments and the amount of the debtor's surplus;

(2) the debtor's employment history, ability to earn and likelihood of future increase in income;

(3) the probable or expected duration of the plan;

(4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;

(5) the extent of preferential treatment between classes of creditors;

(6) the extent to which secured claims are modified;

(7) the type of debt sought to be discharged and whether any such debt is nondischargeable in chapter 7;

(8) the existence of special circumstances such as inordinate medical expenses;

(9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act;

(10) the motivation and sincerity of the debtor in seeking chapter 13 relief;

(11) the burden which the plan's administration would place upon the trustee; and

(12) whether the debtor is attempting to abuse the spirit of the Bankruptcy Code.

836 F.2d 1030 at 1032.

## III. LEGAL DISCUSSION

### A. Analysis and Application of Controlling Law

It would be hard to find any case as similar as this one is to the *Caldwell* case. When examining the facts presented in *Caldwell*, that court found a pattern of deceit, evasive responses to questions, nondisclosure or disclaimer of ownership as to certain assets, active prepetition efforts to put assets out of a judgment creditor's reach and a relatively low repayment dividend for a debt that would not be discharged in chapter 7. The *Caldwell* court also observed that the debtor had filed bankruptcy prior to any attempt to pay the judgment creditor and had admitted ownership of certain assets only when forced to do so by the creditor. *Caldwell* at 1126–1127. Consideration of those facts in a collective sense under a totality of the circumstances analysis caused the *Caldwell* court to find a lack of good faith and, therefore, an abuse of the spirit of chapter 13 of the Bankruptcy Code. *Caldwell* at 1127–1128.

■ This case contains all of the indicia of bad faith found in *Caldwell* except that the length of this debtor's plan is 59 months. The procedural posture of the *Caldwell* case was also different, but that is not a significant factor. This Court is bound by *Caldwell* and, therefore, must find that this debtor has not demonstrated good faith in this chapter 13 process. Accordingly, Bauer's objection must be sustained on that ground.

### B. Further Observations

Even though Bauer's objection to confirmation is being sustained, the Court finds that the debtor's attorney represented him well and gave a much-needed credibility and control to this process.

The Court further observes that it continues to question the strategic decisions made by Bauer. Confirmation of this 30% plan and the powers the creditor has to force later amendment of a plan if the debtor's income greatly improves probably represent a much better collection result than will be achieved outside of bankruptcy. The debtor also is required to report his income and business operations to the trustee on a periodic basis. Should the amount of Bauer's judgment either be increased or decreased as a result of the pending appeal, the claims amendment process and the plan modification process allow for necessary adjustments. Certainly Bauer is free to choose her course of action, but exercising one's "rights" does not always equate to improving one's position. The chapter 13 remedy, as administered by the trustee in this district, treats creditors fairly with minimum costs to the creditor. Negotiation of an acceptable initial dividend, rather than dismissal or conversion, could bring a better result.

## IV. CONCLUSION

Based on the foregoing, the objection to confirmation filed by Martha Bauer is sustained. Confirmation of the debtor's plan is hereby denied. The debtor shall have twenty (20) days to determine whether he will convert this case to chapter 7. If a notice of conversion is not filed, the Court will dismiss this case.

**IT IS SO ORDERED.**